WALKER *v.* STATE.

5116                                                     388 S. W. 2d 13

Opinion delivered March 15, 1965.

Harold L. Hall and Howell, Price & Worsham, for appellant.

Bruce Bennett, Atty. General, By John P. Gill, Asst. Atty. Gen., for appellee.

OSCAR FENDLER, Special Associate Justice. Appellant, James Dean Walker, was charged in the Pulaski Circuit Court with the crime of First Degree Murder. It is alleged that on April 16, 1963, he murdered Jerral Vaughan by shooting him with a pistol. Appellant entered pleas of not guilty and not guilty by reason of insanity. He was committed to the Arkansas State Hospital for Nervous Diseases for observation. On May 5, 1964, appellant was tried and convicted of First Degree Murder as charged in the information. The trial court, on May 18, 1964, sentenced him to death by electrocution. He has appealed to this court.

On the night of April 15, 1963, the appellant and his companion, Russell Freeman Kumpe, together with two young women, Linda Ford and Mary Louise Roberts, visited several Little Rock night clubs. Walker and Kumpe were apparently involved in some trouble in one of the downtown clubs. Several hours later the men checked out of their motel, and accompanied by only Linda Ford, drove their automobile to North Little Rock and out on the England Highway (Arkansas Highway No. 130). They were followed by Miss Roberts in a taxicab that she had hired since she had been excluded from the group. Miss Ford contended that she had been forced at gunpoint to accompany the men.

It is undisputed that Kumpe was driving; that Miss Ford was sitting on the front seat next to him, and that Walker was on the same seat to her right and next to the

door. The car was traveling at a reasonable speed when
it was stopped by a police officer from North Little
Rock, Gene Barrentine. The deceased, Jarrel Vaughan,
in a separate police car, assisted in stopping Kumpe's
vehicle. Both Barrentine and Vaughan, and other police
officers who came to this location within a matter of
minutes of each other's arrival had received word by
radio to intercept and stop a white Oldsmobile. The
Oldsmobile promptly pulled over on the shoulder of the
highway and stopped when Kumpe saw the red light on
the police car.

Kumpe got out of his car by order of Officer Bar-
rentine, and came to the rear of the Oldsmobile; he
leaned against Barrentine's police car while the officer
searched him. As this was being done, Officer Vaughan
approached the passenger side of the Oldsmobile from
the rear; as he reached the car door, gunfire broke out.
Kumpe ran off to the side of the highway. Officer
Barrentine fired twice at Kumpe and fired four rounds
into the Oldsmobile. He then got on the radio in
Vaughan's car and asked for help because he knew
Vaughan had been shot. As he reloaded his pistol, he
saw Walker's head come up again and he fired one
more shot through the rear view glass of the Oldsmobile
at Walker. Walker had also shot at Barrentine through
the same window.

More police arrived; they went to the Oldsmobile
and found Walker lying outside that car on the passenger
side, and Officer Vaughan lying fatally wounded two
feet from him. Walker was in a semi-conscious state,
having been wounded. He had a .38 S & W Snub nose
revolver in his hand that had not been fired. When the
officers rolled Walker over they found he was lying on
a .38 Smith & Wesson 4-inch barrel pistol that was empty.
A third gun (4-inch barrel .38 colt revolver) was found
on the front floor board under the driver's (Kumpe's)
seat. Vaughan's gun was lying there on the ground. The
three guns and empty shells that presumably belonged
to Walker and Kumpe were sent to State Police Head-
quarters for paraffin and ballistic tests.

A surgeon removed the bullet from the deceased Vaughan, which was identified as having been fired by the .38 S & W 4-inch barrel pistol, which was found beneath Walker's body. This bullet was directly overlying Vaughan's heart. Death was almost immediately after the bullet entered Vaughan's body.

Walker had been shot in the right upper arm, right chest, right lower abdomen, and upper right leg; there were five bullet wounds in him. No testimony was offered by the State of the results of ballistic tests on the bullets removed from Walker's body.

The defendant did not testify. Linda Ford, who was sitting in the front seat with Walker, said that he had a pistol in his hand and started firing when the door was opened. She did not know who opened the door, but the door was not open when Officer Vaughan walked up. Thomas Gerald Short, the cab driver, who was also present with the police, testified that Vaughan had bent over looking into the Oldsmobile window and said a few words. Short also stated that when the door came open, Vaughan was doing a little dance-like jig, trying to get away from the car and backed up on the side of the bank; that there was a shot and Vaughan fell on his chest; that he heard several shots; that he did not see any shots fired. He said that Vaughan had just got his gun out when he was shot.

At the conclusion of all testimony, appellant moved for the court to reduce the charge from first degree murder to that of second degree, contending that the State had not proved premeditation, deliberation and intent. The motion was overruled. The trial court gave instructions defining murder as follows:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree.

176

"All other murder shall be deemed murder in the second degree."

The court then gave the State's Requested Instruction No. 2, as follows:

"I will now give you the law defining the charge in this information.

"Murder is the unlawful killing of a human being, in the peace of the State, with malice aforethought, either expressed or implied.

"The manner of the killing is not material, further than it may show the disposition of mind, or the intent with which the act was committed.

"Malice, or expressed malice, is the deliberate intention of mind unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

"Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing manifests an abandoned and wicked disposition.

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by proof on the part of the State it is sufficiently manifest that the offense amounted only to manslaughter or that the accused was justified or excused in committing the homicide. However, the burden of proof is on the State on the whole case to convince you beyond a reasonable doubt of the guilt of the defendant."

Then the court, over appellant's objection, gave State's Requested Instruction No. 9, as follows:

"The punishment for murder in the first degree is death or life imprisonment.

"If you find the defendant, James Dean Walker, guilty of murder in the first degree and you wish to fix his punishment at death in the electric chair, your verdict will be: 'We, the jury, find the defendant guilty of mur-

der in the first degree as charged in the Information.' On the other hand, if you wish to fix his punishment at life imprisonment, you will say: 'We, the jury, find the defendant guilty of murder in the first degree and fix his punishment at life imprisonment in the State Penitentiary.

"If you find the defendant not guilty by reason of insanity, your verdict should be: 'We, the jury, find the defendant not guilty by reason of insanity.

"If you find the defendant not guilty, or if you have a reasonable doubt of his guilt, then you will say: 'We, the jury, find the defendant not guilty.

"In either event, you will sign the verdict by one of your members as Foreman, and the verdict must be unanimous.''

The defendant objected specifically to the action of the court in giving State's Requested Instruction No. 9, as follows:

"The defendant specifically objects to that instruction because the second degree murder charge is not defined and made a part of that. The burden is on the State, and it makes a question for the jury to find the defendant was guilty of intent, premeditation and deliberation. That would be the jury's question, to be decided by them, as to whether it would be first or second degree.''

"THE COURT: Overruled. Save his exceptions.''

Subsequently, the court refused to give Defendant's Instruction No. 7, which would have allowed the jury to decide the degree of murder. Defendant's Requested Instruction No. 7 is as follows:

"You are instructed that if you have a reasonable doubt as to whether the defendant is guilty of murder in the first or second degree, then you must find him guilty only of murder in the second degree. If you have a reasonable doubt as to whether the defendant is guilty of murder in the second degree or manslaughter. If you

have a reasonable doubt as to his guilt in the whole case, then it is your duty to acquit him and find him not guilty.''

In giving the forms of verdicts to the jury, the court said:

''Gentlemen of the jury, I will now give you the forms of your verdict. If you believe the defendant is guilty and you wish to invoke the death penalty, you will say: 'We, the jury, find the defendant, guilty of murder in the first degree, as charged in the information.' That carries the death penalty with it automatically.

''On the other hand, if you wish to sentence the defendant to life imprisonment in the penitentiary, which is your choice, you will say, 'We, the jury, find the defendant guilty of murder in the first degree, as charged in the information, and fix his punishment at life imprisonment in the State Penitentiary.'

''If you feel like the defendant is insane, you will say: 'We, the jury, find the defendant not guilty by reason of insanity.'

''If you feel he is not guilty, or if you have a reasonable doubt of his guilt in the whole case, you will say: 'We, the jury, find the defendant not guilty.'

''This verdict must be unanimous and signed by one of you gentlemen as foreman. You may retire to consider your verdict.''

The Arkansas General Assembly adopted an Act relating to murder on December 17, 1838, which is divided into three sections in Ark. Stats. 1947. These are as follows:

''41-2205. MURDER IN FIRST DEGREE DEFINED. All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery,

burglary or larceny, shall be deemed murder in the first degree.''

''41-2206. MURDER IN SECOND DEGREE. All other murder shall be deemed murder in the second degree.''

''43-2152. MURDER CASES—DEGREE OF OFFENSE FOUND BY JURY. The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the court shall impanel a jury to examine testimony, and the degree of crime shall be found by such jury.''

This court, after carefully studying the record in this appeal, concludes that there is testimony from which the jury could logically infer that Walker was guilty of a lower degree of homicide than first degree murder. It was, therefore, the duty of the trial court to instruct the jury on that degree of the offense of murder. The history of the 1838 Act referred to above has been often discussed in the opinions of this court. See *Walton v. State,* 232 Ark. 86, 334 S. W. 2d 657; *Smith v. State,* 222 Ark. 650, 262 S. W. 2d 272; *Jones v. State,* 204 Ark. 61, 161 S. W. 2d 173; *King v. State,* 117 Ark. 82, 173 S. W. 852.

We have long recognized that there are two classes of first degree murder: (1) Those committed in the perpetration of or attempts to perpetrate named crimes; (2) those committed wilful, deliberate, malicious and premeditated killing.

Where there was no testimony tending to prove that a defendant was guilty of any offense lower than first degree murder, the trial court has not been required to instruct on any other grade of homicide. ''The reason is that; if there is no evidence whatever tending to establish a lower degree of homicide whatever tending to establish a lower degree of homicide than murder in the first degree, it is the jury's duty to take the court's exposition of the law, and the court shall decline to give the jury instructions as to any lower degree of homicide.

On the other hand, if there is any testimony from which the jury might legitimately infer that the defendant was guilty of a lower grade of homicide than murder in the first degree, it would be the duty of the court to instruct on that degree of the offense." *King* v. *State,* supra.

In this record, appellant Walker is not charged with killing in an attempt to commit other crimes, but the information charges murder of Vaughan by Walker shooting him with a pistol, "unlawfully, feloniously, wilfully, and with malice aforethought and after premeditation and deliberation." Although many of our decisions which require the giving of an instruction on second degree murder have dealt with cases where defendants pleaded guilty to a charge of murder in the first degree, this court feels that the same obligation, under Ark. Stat. Ann. § 43-2152 (Repl. 1964), is imposed on the trial court when a defendant pleads not guilty and there is testimony from which the jury can reasonably infer that the accused might be guilty of a lower offense than murder in the first degree.

In this case there is testimony that Walker was shot five times and all on his right side; that Linda Ford sat next to him on his left side and was not shot; that Vaughan did shoot his gun, although we are not told how many times, and we are not informed as to what gun and whose gun fired those five bullets into Walker. Expert medical testimony indicates Vaughan died almost immediately from the one bullet in his body. It can be reasonably inferred that Vaughan shot Walker several times before Walker's one bullet killed Vaughan. The position of Walker's bullet holes negative his being shot by Officer Barrentine, but if the State possesses evidence as to whose gun shot Walker, such can be offered at the second trial. These are only a few of the facts from which the jury could have found a lesser offense of homicide. This is not to say, however, that the evidence is not sufficient to support a conviction of first degree murder.

During the testimony in chief given by the State's witnesses, and prior to any evidence adduced by appel-

lant Walker, the trial court, over specific objections of Walker's counsel, allowed Ray Vick, Chief of Police in North Little Rock, to testify that Officer Vaughan was "a very efficient officer, well liked, and did his work without any complaints." He said that in 1961 Vaughan had won an award from a civic club for courtesy.

Prior to this testimony, Walker's counsel, in chambers, advised the court that the State planned to call Vaughan's widow and he objected to her being placed on the stand because she knew nothing about the alleged homicide; that the only purpose in using her was to prejudice the jury and sway it against the accused. The court asked the prosecuting attorney why he proposed to use the widow and he replied "to show her husband's age and certain things about him . . ." The court overruled appellant's objections. First, Chief Vick was called, then Mrs. Mada Vaughan was placed on the stand. She testified that Vaughan was 32; that they had been married 12 years and had two children—a little girl 8 years old and a little boy, 16 months old. The prosecutor asked:

"Q. Was he a good father and husband?"

"Mr. Hall: I object, your Honor."

"A. He was a wonderful husband."

"Mr. Hall: I object your Honor. I made an objection in chambers which I would like to renew at this time."

The court sustained the objection, but never told the jury to disregard the answer. The prosecutor then asked the widow what she was doing at this time. The objection was sustained. The widow, on being excused, went to the waiting room near the Judge's and Clerk's offices and fainted. One juror apparently saw her faint. Walker's counsel called this episode to the court's attention. The prosecutor told the court he brought the widow to show the type of character Vaughan was, because counsel for Walker in his opening statement told the jury there was a question as to who fired the first shot.

The admission of this testimony offered by the State was error. This evidence was introduced by the State before the accused had offered any testimony. The accused had not attacked the fact that this young police officer was a man of good reputation. Our court has held in several cases that such evidence offered by the prosecution should not be admitted until the accused has undertaken to attack the character of the deceased in that respect. *Bloomer* v. *State,* 75 Ark. 297, 87 S. W. 438; *Bridges* v. *State,* 169 Ark. 335, 275 S. W. 671; See also *Mode* v. *State,* 235 Ark. 46, 350 S. W. 2d 675; Wharton's Criminal Evidence, Vol. 1, 12th Ed., Sec. 160, and cases cited there.

How many children officer Vaughan had, their ages, whether he was a kind and loving husband, his efficiency on the police force, and any matters relating to his good character are irrelevant facts in this case. The Alabama Court in *Knight* v. *State,* 142 So. 2d 899, said that to hold such evidence not prejudicial to the defendant was to disregard the realities of trial atmosphere and the emotional frailties of human nature. In view of a second trial, we are bound to call this error to the trial court's attention.

Walker was committed to the State Hospital by the trial court under authority of Initiated Measure 1936, No. 3, Sec. 11, (Ark. Stat. Ann. § 43-1301), which provides:

". . . A written report prepared by the physician or physicians employed by the State Hospital shall indicate separately the defendant's mental condition during the period of examination, and his probable mental condition at the time of the alleged offense. . . ."

In this case a hospital report was introduced in evidence by the State.

The trial court, over appellant's objection, gave State's Requested Instruction No. 6 that reads:

"You are further instructed that whenever a defendant is committed to the State Hospial pursuant to

Initiated Act 3 of 1937 for a sanity test that under the language of said state law, a written report prepared by the physician or physicians employed by the State Hospital shall indicate separately the defendant's mental condition during the period of examination, and his probable mental condition at the time of the alleged offense. This report shall be certified by the superintendent or supervising officer of the State Hospital, under his seal, or by an affidavit duly subscribed and sworn to by him before a notary public who shall add his certificate and affix his seal thereto.''

The instruction should not have been given because it singles out and calls the jury's attention to particular evidence. See *Scott* v. *State,* 109 Ark. 391, 159 S. W. 1095. Article 7, Sec. 23, Constitution of 1874 of Arkansas.

The trial court, in anticipating the need for additional jurors, prior to the opening trial on May 5, 1964, opened Special Panel Lists Nos. 4 and 5. The judge was in the Clerk's office with his Bailiff, a deputy clerk, the clerk's assistant, and the court reporter. The defendant Walker and his counsel were not present. Walker's counsel objected to the use of jurors on these lists because the lists were not opened in ''open court''. Arkansas Statutes 1947, amended, Sec. 39-221, requires that the trial court order the clerk to open the panel of special jurors in *open court*. The better practice would be to follow the statute strictly in that respect.

Other errors complained of by appellant Walker are unlikely to be repeated in a new trial. For that reason, we deem it unnecessary to discuss them.

For the errors described herein, the judgment will be reversed and the cause remanded for a new trial.

Holt, J., not participating.