Donald Thurman BREWER *v.* STATE of Arkansas

CR 80-107                                    608 S.W. 2d 363

Supreme Court of Arkansas
Opinion delivered December 1, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Jackson Jones*, Deputy State Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant was convicted of capital felony murder pursuant to Ark. Stat. Ann. § 41-1501 (Repl. 1977) and aggravated robbery pursuant to Ark. Stat. Ann. §§ 41-2102 and 41-2103 (Repl. 1977). He was sentenced to life without parole on capital murder and ten years on aggravated robbery.

The appellant argues eight points for reversal, and we will deal with them separately as we proceed through the opinion. We find prejudicial error on grounds which will be later set out and remand for a new trial.

Appellant and two others were charged with capital murder and aggravated robbery as a result of an occurrence at Charlotte, Arkansas, on December 14, 1978. Appellant and one of the other codefendants went to the store operated by Morris Lillard and in the course of robbery took the life of Mr. Lillard by the use of a firearm. The following day the appellant and the same codefendant went to Tucson, Arizona, where they were arrested in a mobile home by the Arizona police on December 18, 1978. The Arizona police were acting on the authority of an Arizona statute which enabled them to make an arrest on receiving information from the authorities in another state that the person to be arrested was charged with a crime which carried a penalty of more than one year in prison. Following his arrest, appellant gave a confession to the Arizona police. An attorney was appointed for the appellant shortly after the confession was made. He subsequently waived extradition and was returned to Arkansas. He was tried in Heber Springs on a change of venue from Batesville. Prior to his trial a motion to suppress the confession was overruled. The confession was subsequently introduced at trial and was corroborated by the Arizona officer who was present during the time the statement was taken. A codefendant's statement was excluded when it was offered by the appellant on his behalf during the trial. The appellant took the stand and in effect testified that although he knowingly went to the store for the purpose of robbing Mr. Lillard he did not take part in the actual murder of the victim. The arguments for reversal on appeal relate to the actual trial proceedings.

I.

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE INCRIMINATING STATEMENTS BY THE APPELLANT WHICH WERE NOT VOLUNTARY, WERE OBTAINED IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS, AND WERE TAINTED BY AN ILLEGAL ARREST.

The Arizona officer testified that he gave the appellant his Miranda warning immediately after entering the mobile home and making the arrest. The officer stated they were in-

vited into the mobile home after knocking on the door. The officer further testified that at one point the appellant appeared to become somewhat confused and he stopped his questioning and again went through the Miranda warning process. During the approximately one hour in which the appellant was questioned, he received the Miranda warning three times.

Julie Lauber, an attorney with the Pima County Public Defender's office, interviewed the appellant after the statement and stated he found him to be incoherent, unintelligent and possibly under the influence of drugs.

Dr. Lewis Britton, a psychiatrist, testified he felt appellant was under the influence of drugs and/or alcohol and was suffering from long-term toxic poisoning effects of drugs and/or alcohol. He felt the appellant demonstrated an organic brain syndrome.

Dr. Rosendale, psychiatrist for the state, concluded that the appellant was not under the influence of drugs or alcohol, was not suffering from organic brain syndrome, and that he made a voluntary and knowing waiver of his rights in giving the statement to the police.

When the voluntariness of a confession is dependent upon the credibility of the witnesses, we must defer to the superior position of the trial judge for a resolution of the conflict and determination of the fact question. *Grant* v. *State*, 267 Ark. 50, 589 S.W. 2d 11 (1979). We have many times held that on appeal this Court reviews the evidence and makes an independent determination of the ultimate issue of voluntariness based upon the totality of the circumstances. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515 (1974). See also *Giles* v. *State*, 261 Ark. 413, 549 S.W. 2d 479 (1977). In viewing the totality of the circumstances in this case, in addition to the testimony given by the appellant when he took the stand in his own behalf, we are of the opinion that the trial court did not err in admitting the statements in question.

II.

THE TRIAL COURT ERRED IN REFUSING TO

EXCUSE FOR CAUSE TWO PROSPECTIVE JURORS WHO INDICATED THAT THEY COULD NOT CONSIDER AGE AND/OR OTHER MITIGATING FACTORS IN DETERMINING THE SENTENCE TO BE IMPOSED ON THE APPELLANT IF HE WERE FOUND GUILTY OF CAPITAL MURDER.

The voir dire examination of the jurors went on exhaustively with at least two jurors making equivocal statements that they would or would not consider the appellant's age or his mental condition in determining the sentence to be imposed. In other words, they would not abide by the court's instruction because they felt if the appellant was old enough to commit the crime, he was old enough to suffer the consequences. It would serve no useful purpose to detail the many times contradictory answers were given by these two jurors. It is well summed up by the court in making the final decision on one of the jurors when the court stated:

> I'm not going to excuse her for cause. I don't think she understands properly, so I'm going to leave it like it is.

It appears that if the court or one of the attorneys had put the question to the juror early in the voir dire as to whether the juror would consider the full range of the penalties on the guilt or innocence stage and whether they would consider the mitigating circumstances in the sentencing stage, that the answer should have been binding and all the vacillating thereafter could have been avoided. It is not necessary to question a juror repeatedly when they have once expressed a clear opinion as to whether they would or would not consider all relevant matters. Although we think at least one of the jurors should have been excused for cause, we do not find it prejudicial error for the reason that she was challenged peremporily by the defense. Thereafter, there was no showing that the appellant had to accept another juror who was unacceptable after they had exhausted their peremptory challenges. In any event, questions relating to the death penalty became moot when such penalty was not imposed.

## III.

THE TRIAL COURT ERRED IN ADMITTING INTO

EVIDENCE TESTIMONY BY MEMBERS OF THE VICTIM'S FAMILY WHICH WAS IRRELEVANT OR THE RELEVANCE AND PROBATIVE VALUE OF WHICH WERE SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE TO THE APPELLANT.

The widow of the victim was called to the stand to identify the cash register and to show the decedent's habits and routine. Appellant agreed to stipulate to the testimony of the widow and to the truthfulness thereof. However, the court ruled that the state had the right to put her on but cautioned against anything inflammatory. Her testimony included the length of their marraige and the manner in which they operated the store. She broke into tears and was obviously emotionally upset. The three children of the victim testified about the normal habits of the deceased, and one of them testified that she arrived at the store and observed her "daddy's" body and further that nothing was moved until the police arrived. She also identified pictures as being those of her father.

The appellant argues that this testimony by the family should have been excluded under Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), Rule 401. It is the opinion of the majority of the Court that the testimony of the family members was properly allowed. Although it may have been inflammatory to an extent, it was proper to allow the state to prove its case as fully as it could. Rule 401 states:

"Relevant evidence" means evidence having any tendency to make the exitence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 406 (a) provides:

Admissibility. Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the

person or organization on a particular occasion was in conformity with the habit or routine practice.

The trial court has the discretion to determine the relevancy of evidence and its admissibility. This Court will not overturn that discretion absent a clear abuse thereof. *Hamblin* v. *State*, 268 Ark. 497, 597 S.W. 2d 589 (1980). We are not unaware of appellant's reliance upon *Walker* v. *State*, 239 Ark. 172, 388 S.W. 2d 13 (1965). However, the majority distinguishes the *Walker* case from the present case inasmuch as in *Walker*, there was no effort to prove the habit or routine practice of the decedent nor any fact in issue. The majority feels that all of the evidence presented by the members of the family was either for the purpose of showing a proper element of the offense or to show the habit and routine of the victim. Therefore, we do not find the admission of this testimony to be reversible error.

## IV.

## THE TRIAL COURT ERRED IN REFUSING TO ALLOW TESTIMONY CONCERNING A STATEMENT MADE TO POLICE OFFICERS BY THE APPELLANT'S ACCOMPLICE, WHO WAS UNAVAILABLE AS A WITNESS.

Appellant sought to introduce evidence that a police officer from Arizona would testify that David Weaver, an accomplice, told the officer during an interview that the appellant used a pistol as the murder weapon. The evidence produced at the trial indicated that a rifle was used to fire the fatal shots. Appellant sought to support the officer's statement by the accomplice; however, he was unable to do so because the accomplice invoked the Fifth Amendment. Appellant argues that the accomplice then became unavailable at a witness. He relies upon Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), Rule 804 (a) (1). There is no question but that the accomplice became unavailable pursuant to this rule. The question then is whether such testimony is available to the appllant. Thus, Rule 804 (b)(3) comes into play. This rule states:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interset, or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, is not within this exception.

Although Rule 804 (b)(3) defines hearsay exceptions, it must be noticed that the concluding sentence pertains to the situation where the statement or confession is offered against the accused. In this case it was offered on behalf of the accused. Therefore, the proffered testimony does not come under the plain language of the last sentence of Rule 804 (b) (3), which is the exception to the exception. Appellant further argues the case of *Welch* v. *State*, 269 Ark. 208, 599 S.W. 2d 717 (1980), is controlling in this case. We do not agree that *Welch* supports appellant's argument. In *Welch* we stated:

By the explicit language of the Rule this particular statement was not admissible unless corroborating circumstances clearly indicate its trustworthiness. That condition is of primary importance, for without it an accused could fabricate a tale that he met a stranger on the street who admitted having comitted the offense on trial. Other witnesses could also be called to testify that the stranger made the statement.

Thus, it seems to us that *Welch* holds squarely against the appellant's argument. Therefore, it was hearsay, and we can-

not say that the corroborating circumstances clearly indicate the trustworthiness of the statement. We do not find the court erred in rejecting this evidence.

## V.

## THE TRIAL COURT ERRED IN REFUSING TO GIVE THE APPELLANT'S REQUESTED JURY INSTRUCTIONS ON LESSER INCLUDED OFFENSES.

Appellant requested the court to give instructions on the lesser included offenses of first degree murder, second degree murder, manslaughter and negligent homicide, as well as instructions concerning the lesser included offenses in general and the punishment for non-capital homicide. The court refused to give these instructions. In the very recent case of *Robinson* v. *State*, 269 Ark. 90, 598 S.W. 2d 421 (1980), this Court held it was reversible error to refuse to give instructions on the lesser included offense of second degree murder where the appellant was charged with capital murder. In *Robinson*, as here, the defense of insanity of diminished mental capacity was argued. We have held that where there is the slightest evidence to warrant such an instruction, it was error to refuse to give it. *King* v. *State*, 117 Ark. 82, 173 S.W. 852 (1915); *Walker* v. *State*, 239 Ark. 172, 388 S.W. 2d 13 (1965); and *Westbrook* v. *State*, 265 Ark. 736, 580 S.W. 2d 702 (1979). No right has been more seriously protected by this Court than the right of an accused to have the jury instructions on lesser offenses included in the more serious offense charged. *Caton & Headley* v. *State*, 252 Ark. 420, 479 S.W. 2d 537 (1972).

There was evidence that the appellant was suffering from mental disease or defect or drug intoxication at the time of the offense. Had the jury been given an opportunity to decide between murder in the first degree and capital felony murder they may have chosen the former. Under the instructions given, they were not permitted to find appellant guilty of murder in the first degree. Also, there was some evidence, however slight, that the appellant did not commit the homicidal act nor solicit, command, induce, procure, counsel or aid in its commission. Even though it was admitted that appellant was armed with a deadly weapon and knew that his

accomplice was also armed, the jury could have found appellant guilty of murder in the first degree and not guilty of capital murder. It seems to us that the trial court's ruling that there was no evidence to indicate a lesser degree of murder was error. We think this error was prejudicial and that the evidence as presented would at least support giving the instruction on murder in the first degree. Upon retrial, the evidence may not be the same and may require different instructions concerning lesser included offenses.

## VI.

THE TRIAL COURT ERRED IN REFUSING TO RULE THAT ARK. STAT. ANN. § 41-1501 (REPL. 1977) IS UNCONSTITUTIONAL IN THAT IT PROVIDES AN "AFFIRMATIVE DEFENSE" WHICH IMPERMISSIBLY SHIFTS THE BURDEN OF PROOF TO THE DEFENDANT WITH RESPECT TO AN ESSENTIAL ELEMENT OF 'THE OFFENSE OF CAPITAL MURDER.

Appellant is correct in stating that the state has the burden of proof throughout the trial and this burden never shifts. However, appellant argues that the affirmative defense set out in Ark. Stat. Ann. § 41-1501 (2) (Repl. 1977) in actuality shifts the burden to the defendant with respect to an essential element of the offense. He argues this shifting of the burden when an affirmative defense is relied upon violates the rules set forth in *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975). We considered the matter of shifting the burden in an affirmative defense case in *Hulsey* v. *State*, 261 Ark. 449, 549 S.W. 2d 73 (1977), where we stated:

> We do not view the court's instruction here as an erroneous one since it does not change the burden of proof as to the essential elements of the crime which always remain on the State; only the burden of persuasion as to the affirmative defense is placed on the appellant.

There would be no question that an affirmative defense which would require the appellant to testify to establish what

is actually an element of the offense would be in violation of the Fifth Amendment. The question then presented is whether the affirmative defense in this case in practical application requires the accused to take the stand in the matter of proof on his affirmative defense. We cannot answer the question in this case due to the manner in which the evidence has been presented. Therefore, we are unable to say that § 14-1501 as applied in this case shifts the burden to prove any element of the offense to the accused. Therefore, we do not find prejudicial error to have occurred.

## VII.

### THE TRIAL COURT ERRED IN ADDING TO AMCI 401 (ACCOMPLICES – DEFINITION AND JOINT RESPONSIBILITY) THE FOLLOWING SENTENCE: "THE PUNISHMENT FOR AN ACCOMPLICE IS THE SAME AS THAT OF A PRINCIPAL."

AMCI 401 does not include the sentence added by the court. The Court added the sentence: "The punishment for an accomplice is the same as that of a principal." Appellant timely objected. In our Per Curiam of January 29, 1979, wherein we adopted the AMCI instructions, we stated:

> If Arkansas Model Criminal Instructions (AMCI) contains an instruction applicable to a criminal case, and the trial judge determines that the jury should be instructed on the subject, the AMCI instruction shall be used unless the trial judge finds that it does not accurately state the law. If that event, he will state his reasons for refusing the AMCI instruction. . . .

Even though the jury was entitled to an instruction concerning an accomplice, this was not the place in the trial when it should have been given. Also, it is a misstatement of the law as it says the punishment for an accomplice is the same as that of a principal when in fact the law states that an accomplice may be punished the same as a principal. Also, he could receive a sentence less than the principal.

We find the added sentence constituted prejudicial error in this case.

## VIII.

THE TRIAL COURT ERRED IN REFUSING TO SUSTAIN THE APPELLANT'S OBJECTIONS AND MOTIONS FOR MISTRIAL BASED UPON REMARKS BY THE PROSECUTOR DURING CLOSING ARGUMENT WHICH WERE NOT BASED ON THE EVIDENCE, WHICH CONSTITUTED APPEALS TO THE PASSIONS AND PREJUDICES OF THE JURY, AND WHICH CONSTITUTED ERRONEOUS STATEMENTS OF THE LAW.

The prosecutor made remarks relating to the testimony of the members of the family. The appellant objected to these remarks as being outside the record. Since the majority holds the testimony of the family members was proper, then it follows that the remarks by the prosecutor concerning these matters would have a basis in the record and consequently did not result in prejudicial error. However, the prosecutor did attempt to explain Ark. Stat. Ann. § 41-1502 (2) (Repl. 1979), the affirmative defense to capital murder, to the jury. We find the remarks by the prosecutor relating to the affirmative defense erroneous. It appears that he gave an improper explanation of the affirmative defense. There is always a danger in attempting to explain a complicated instruction to the jury. Therefore, an attorney does so at his own peril when he attempts to comment on the law contained in instructions which have been read to the jury.

Since this is not likely to occur on retrial, we will not go into the matter any further at this time. However, we will state that closing arguments should be confined to the questions in issue, the evidence introduced, and all reasonable inferences and deductions which may be drawn therefrom. *Williams v. State*, 259 Ark. 667, 535 S.W. 2d 842 (1976).

Reversed and remanded.