Eugene JAMES and Archie ELLIOTT
*v.* STATE of Arkansas

CR 80-126                                605 S.W. 2d 448
Supreme Court of Arkansas
Opinion delivered October 6, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Jack Kearney*, Deputy Defender, for appellants.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellants were convicted of aggravated robbery, and the jury sentenced each of them to 25 years in the Department of Correction. On appeal they urge: (1) the court erred in admitting evidence based upon pretrial "show up" identification; (2) the trial judge made improper remarks relating to the Arkansas parole system; (3) the conduct of the prosecuting attorney and the trial judge was prejudicial.

We do not agree with any of the appellants' contentions and affirm the sentence imposed by the trial court.

The facts reveal two black males entered and robbed the Highway Liquor Store in Brinkley, Arkansas, on December 20, 1978. The robbers threatened the store manager and a young lady who was visiting in the store at the time. A handgun was used in perpetrating the crime; and, the robbers, after taking the money, threatened to shoot the manager and her guest if they did not stay on the floor as ordered.

During the robbery Richard Jordan entered the store while the robbery was in progress. He observed the robber's use of the handgun and heard part of the conversation. He re-entered the store after the robbers left and tried to buy a drink or a bottle of liquor, and informed the manager he knew the robbers.

The police were called; and, upon their arrival at the store, the manager told them there was an eyewitness named Jordan who could identify the robbers. The Chief of Police, George Bethell, happened to know Richard Jordan. The officers went immediately to Jordan's home and contacted him. He informed the officers he knew the robbers and stated their names were Archie Elliott and Eugene James. Within two hours of the robbery, the appellants were taken into custody. Neither the weapon nor the money was ever found.

The next day Chief Bethell took eight photographs, including those of the appellants, to the victim, Marjorie Vandenberg, to see if she could identify the robbers. She picked out the photographs of appellants and stated "they looked mighty like these two." The eight photographs were spread in a line, and the appellant's photos were on each end. According to Chief Bethell, he picked the eight photographs because they all had a similar appearance and were of similar age and size. The following day the chief called Mrs. Vanderberg to the station to see if she could identify the appellants as the robbers. They were the only two black males present in the chief's office when Mrs. Vanderberg came by and stated the two looked like the robbers.

During the trial witness Vanderberg was asked if she could identify the appellants who were in the courtroom. When she replied in the affirmative, the appellant's counsel objected on the grounds that the in-court identification was tainted by the prior out of court procedures which included the photograph display and the "show up" identification. After an in camera hearing, the court overruled the objection. Later in the trial Richard Jordan and Lena Garris both positively identified the appellants as the robbers. Lena Garris was absolutely positive in her identification of the man with the gun but not as positive to the other one. Jordan expressed no doubt about the identity of either of the appellants.

The appellants relied upon an alibi as a defense. While one of the appellants' witnesses, Geraldine Valentine, was being cross-examined by the prosecuting attorney, she was asked about her drinking habits, health, employment, and several questions relating to her receiving welfare benefits. The prosecutor dwelled upon her being physically able to work while she was receiving welfare benefits for herself and /or her children. Objections were made to this line of questioning.

During deliberation the jury returned to the courtoom and asked the judge to explain the parole system in Arkansas. The court replied:

> Madam, I am not permitted to do that under the law. I don't know why because I think you ought to know, but it's against the law for me to tell you anything about the parole system. That's strange, but that's the law. I think you ought to know anything about a case, but I just can't do it.

We first consider the argument that the in-court identification was tainted by the photographs and the "show up" identification. The in-court identification will be suppressed only if the procedure was unconstitutionally defective to the extent it violated appellants' due process rights. Appellants argue the photo identification procedure was improper. As far as the photographs were concerned, it does not appear

that they were unduly suggestive. According to Chief Bethell, the eight people represented in the photographs were of similar age and size and were all dressed in street clothing. We know of no rule requiring the photographs used in such procedure to be produced as exhibits as argued by appellants. There is no showing that appellants ever requested the photos be produced for inspection or brought to court. Chief Bethell testified that there was nothing suggestive about them, and the witness readily identified the two without any prompting whatsoever. We do not find the record anything which would indicate to us the photograph identification was improper.

It is the likelihood of misidentification that taints the out of court identification process. In determining whether an in-court identification is tainted by pretrial occurrences, we consider the totality of the circumstances. In doing so, we consider the opportunity of the identifying witness to observe the accused at the time of the criminal act; the lapse of time between the occurrences and the identification; any inconsistencies of the description given by the witness; whether there was prior misidentification; the facts surrounding the identification; and all matters relating to the identification process. *Mayes* v. *State*, 264 Ark. 283, 571 S.W. 2d 420 (1978). We have stated reliability is the linchpin in determining the admissibility of identification testimony. In the determination of the admissibility we consider the totality of the circumstances. *Lindsey & Jackson* v. *State*, 264 Ark. 430, 572 S.W. 2d 145 (1978). In *Neil* v. *Biggers*, 409 U.S. 188 (1973), it was held that a "show up" rather than a line-up does not violate a defendant's constitutional right unless there are other circumstances rendering the identification unreliable.

In the present case Mrs. Vanderburg testified she saw the men clearly and at close range when they robbed her. The next day she picked their photographs from among a group of eight. The following day she was called to the station and again identified them in what we term as a "show up." The appellants were the only people she observed who could possibly be the robbers. We recognize there is a real danger of undue suggestiveness in a "show up" identification, and such method should not ordinarily be arranged. We cannot say

from the totality of the circumstances here involved that the "show up" tainted the in-court identification sufficiently to render it inadmissible. So far as the photograph identification is concerned, we see nothing wrong with it. Certainly, we do not feel it in any manner tainted the in-court identification by this witness. Additionally, there were two other eyewitnesses who made positive identification in court, and neither had been subjected to the photograph or "show up" process. Therefore, even without the testimony of witness Vanderburg, there is sufficient identification to support the verdict in this case.

Appellants argue the court erred in its comment to the jury regarding the Arkansas parole system. We have set out the entire statement of the trial court in the factual portion of this opinion. It probably would have been better for the court to have stopped after completing the first sentence of the statement; however, we do not see anything in the balance of the statement which even closely resembles the factual situation in *Bell* v. *State*, 223 Ark. 304, 265 S.W. 2d 709 (1954); *Andrews* v. *State*, 251 Ark. 279, 472 S.W. 2d 86 (1971); or in the other cases cited by appellants. In the cases relied upon by the appellants the trial court actually commented on the effect of the parole system and the sentence itself or upon the authority of the Governor to grant clemency or pardon. There was no error in the remarks made by the court in this case.

Finally, we consider the argument that the combined conduct of the presiding judge and the prosecuting attorney created a prejudicial atmosphere against the appellants. The only other argument relating to the trial court was a statement made during the in camera hearing when the trial court stated:

From the time you walked into the whiskey store and saw *these two boys* in there tell exactly in detail what you saw.

This remark was made in chambers and was not heard by the jury. Also, the witness had already made positive iden-

tification of the appellants as the robbers. We cannot conceive of any prejudice from this remark.

It is true the prosecuting attorney wandered far afield in his cross-examination of witness Geraldine Valentine. A wide latitude is usually given in matters of cross-examination. We do not believe the social security and welfare payments were proper matters for cross-examination in this particular case. The prosecutor was attempting to discredit the witness, but these matters did not really go to proper cross-examination. It may be that some members of the jury did not think well of able-bodied adults who drew welfare rather than worked. Although it was error for the prosecutor to ask such questions, the error is not one which rises to the level of prejudice to the appellants. Therefore, we do not find the remarks of the trial court and the improper cross-examination by the prosecuting attorney to be reversible error.

Affirmed.