Fred Lee HOGAN *v.* STATE of Arkansas

CR 83-101                                        663 S.W.2d 726

Supreme Court of Arkansas
Opinion delivered January 30, 1984

*Ken Cook,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Matthew Wood Fleming,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. A Crittenden County jury found appellant, Fred Lee Hogan, guilty of capital felony murder and fixed his punishment at life imprisonment without parole. The information alleged that appellant had caused the death of Martha Marie Murray in the course of and in the furtherance of the commission of the crimes of rape and kidnapping. On appeal we affirm.

On May 25, 1982, the victim's body was found floating in the Mississippi River near the Crittenden County bank. The body was badly decomposed. Positive identification was made by medical records. The autopsy report identified the cause of death as blunt trauma to the front, side, and back of the right side of the chest. Fractures of the rib cage were extensive.

The victim was last seen alive on March 24, 1982, around 11:15 p.m. at the Fast Check Food Store on Kentucky Street in Memphis, Tennessee. A co-worker, Richard Nallin, testified that he and the victim had gotten off work at 11:00 p.m. that evening, and, as was their custom, each had stopped by the Fast Check Food Store on their way home. Nallin testified that when the victim arrived at the store, he was seated in his truck talking out the window to a friend seated in another car. He observed the victim drive up to the store alone, get out of her car, return to her car, and drive away. Nallin identified appellant as the person who had approached the store from behind his truck and was standing near the front door of the store when the victim entered. Nallin stated that after he saw the victim enter the store, he did not see appellant again nor did he see a second person in the victim's automobile as she drove away. Nallin testified that ordinarily he would pass the victim on the freeway after they had both left the store, but he did not pass her on this date.

Witness, James Houston, testified that he had known appellant about twenty years. He stated that on March 24, 1982, he first saw appellant at about 6:30 p.m., that they were drinking and had made several trips to the liquor store on Kansas and Crump Streets, and that they had gotten some beer at the Fast Check Store. Later that evening, appellant left Houston's mother's house located about three blocks from the Fast Check Store, saying that he was going home. Houston did not know where appellant actually went. Houston further testified that he and appellant knew the "guy who ran the store" and that they went there often. After the night of March 24, however, he did not see appellant "around the Fast Check anymore."

Around 3:00 p.m., March 26, 1982, the victim's 1974 Ford Maverick automobile was found in Arkansas about 1,000 yards west of the west end of the Memphis-Arkansas Bridge. It was parked on a small dirt road that runs parallel with Interstate 55. Blood was found smudged in various parts of the automobile. The victim's blood-stained, torn bra was found in the center of the front seat. In the center of the front floor board were found the victim's pink panties, white panty girdle, panty hose, and a knee brace; these items were

found wadded up together and inside each other. Dr. Charles Dorsey, Chief Forensic Serologist of the Arkansas State Crime Lab, testified that semen found on the torn panties and girdle came from a type "O" secretor and was loaded with spermatozoal cells. Appellant was identified as a type "O" secretor. The victim's husband could not have been the source of the spermatozoal cells since he had had a vasectomy. Appellant's fingerprints were found on the dome light cover which had been removed from the light fixture.

Appellant first argues that the evidence was insufficient to prove the offense of capital felony murder, arguing that there was no evidence of kidnapping or rape. Upon appellate review, it is our responsibility to determine whether the evidence, when viewed in the light most favorable to the appellee, is substantial. *Fountain* v. *State,* 273 Ark. 457, 620 S.W.2d 936 (1981); *Williams* v. *State,* 258 Ark. 207, 523 S.W.2d 377 (1975). The test for substantial evidence is whether the jury could have reached its conclusion without having to resort to speculation and conjecture. *Cassell* v. *State,* 273 Ark. 59, 616 S.W.2d 485 (1981). In reviewing the evidence, it is clear that there is substantial evidence to support the verdict. The jury could have found that appellant either kidnapped the victim, raped or attempted to rape her, and, in the course and furtherance of these crimes, killed her. *See* Ark. Stat. Ann. § 41-1501(1)(a).

Since appellant did not receive the death penalty, his argument that the death penalty constitutes cruel and unusual punishment and that its arbitrary application violates due process will not be considered.

Appellant argues that the trial court erred in denying his motion to sequester the jury. The burden of proving that appellant did not receive a fair trial because of failure to sequester the jury is on the appellant. *Ford* v. *State,* 276 Ark. 98, 633 S.W.2d 3, *cert. denied,* ___ U.S. ___ , 103 S. Ct. 389, 74 L. Ed. 2d 519 (1982). Even so, appellant offered no proof that any of the jurors were influenced by matters outside the courtroom. Whether or not the jury should be sequestered rests within the sound discretion of the trial court. No abuse of this discretion has been shown.

The trial court did not err in refusing to suppress the in-court identification of appellant. This court looks to the totality of the circumstances to determine whether the lineup procedures have been sufficient to preclude identification testimony at trial. We will not reverse the trial court's ruling unless clearly erroneous. *James & Elliott* v. *State,* 270 Ark. 596, 605 S.W.2d 448 (1980). Appellant argues that he was the only person in the lineup wearing a green coat, and the witness, Nallin, stated "that green coat is what he had on." But a lineup is not *per se* unconstitutionally suggestive merely because only one person was wearing a piece of clothing similar to the one worn by the offender. *Matthews* v. *State,* 275 Ark. 1, 627 S.W.2d 20 (1982); *McGraw* v. *State,* 262 Ark. 707, 561 S.W.2d 71 (1978). While sitting in his truck, the witness had the opportunity to observe appellant conspicuously staring at him while walking from behind his truck to the front of the store. The witness further observed appellant standing under four flood lights in front of the store while the victim was walking by. Further, the witness was firm and unequivocal in his identification. We cannot say the trial court erred in allowing the in-court identification.

Since appellant has admitted he was not prejudiced, the trial court did not err in refusing to grant a mistrial when three prospective jurors were seen reading *The Commercial Appeal,* a Memphis, Tennessee, newspaper.

Appellant argues the trial court erred in refusing to grant a mistrial when Officer Wilburn Marr gave an unresponsive answer to a question from appellant's counsel regarding fingerprints the officer had taken following appellant's arrest:

BY MR. COOK:

Q. Officer Marr, were these the first take here, or did you have to take any more than once?

A. No, sir, that's all I took. We do have a prior arrest record on him, which we do have a fingerprint card on.

Appellant's attorney objected stating:

> [I]t is speculative as to the effect they [the jury] would give it. I don't see any way — Certainly, it can't help us, and I think it was probably much more prejudicial than it was probative of the fact, since I hadn't even asked him about that. He just simply volunteered it.

The trial court denied the motion stating:

> [T]he officer's response could well have been considered by him as being pertinent to the question. I didn't get the impression at all that it was a gratuitous or deliberate effort on the officer's part to interject anything improper in this lawsuit, and I don't think the harm, if any, that was done, is sufficient to justify the extreme remedy of a mistrial.

Whether or not to declare a mistrial under the circumstances of this case rests in the sound discretion of the trial court. *Nolen* v. *State*, 278 Ark. 17, 643 S.W.2d 259 (1982). Here we cannot say the court abused its discretion.

Appellant argues that the trial court erred in allowing the state during the penalty phase of the trial to introduce into evidence appellant's recent rape convictions for the purpose of showing aggravating circumstances. But appellant candidly admits on appeal that no prejudice resulted since the jury fixed appellant's punishment at life without parole rather than death.

We have examined all other objections made during the trial pursuant to Rule 11(f), Rules of the Supreme Court, Ark. Stat. Ann. Vol. 3A (Repl. 1977) and find no error. See *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

Affirmed.

PURTLE, DUDLEY and HOLLINGSWORTH, JJ., dissent.

P. A. HOLLINGSWORTH, Justice, dissenting, The majority states that there is substantial evidence to support

the conviction of the appellant of capital felony murder. I disagree.

The appellant maintains that the state failed to prove beyond a reasonable doubt that a murder, kidnapping or rape occurred. To prove capital murder, the State must prove murder and one of the two underlying felonies.

The evidence at the trial showed that the appellant was seen at the Fast Check store where the victim was last seen. A co-worker with the victim saw both the appellant and the victim at the store at the same time and later picked the appellant out of a line-up. The witness saw the victim drive off. He did not see the appellant in the car when the victim drove off. The witness testified he would customarily pass the victim on his way home from work since they both traveled the same route. On the night of the murder, he did not see her after she drove away. The victim's car was last seen on Wednesday night before being found on Friday afternoon west of and under the old Memphis Arkansas Bridge. There were signs of a struggle both in the car and in the area around the car. The dirt and grass on the driver's side was scuffed and knocked down. The car was unlocked and the keys were found on the ground to the right rear of the vehicle. A yellow cable with blood on it was found near the keys. In the car, officers found articles of the victim's clothing with blood spots on them and blood on various parts of the car. A fingerprint was discovered on the dome light which was matched with one of the appellant's. The forensic expert testified that the blood found in the car was blood type "O" which was the blood type of the victim, her husband, and the appellant. The undergarments were found to contain a large quantity of semen from a person with blood type "O."

The victim's body was found in the river two months later. The body was identified by a dentist as the victim's. The cause of death was from blunt trauma to the chest. The expert witness testified that the cable could have produced the type of injury and wound on the victim. The expert testified that the victim was either dead or dying when she was placed in the water.

The appellant claims that the court should have directed a verdict for acquittal at the close of the State's case because of the state's failure to prove every element of the offense beyond a reasonable doubt as they are required by law. *Small* v. *State,* 5 Ark. App. 87, 632 S.W.2d 448 (1982). It appears the majority has allowed the prosecution to prove the conduct charged to the appellant by a preponderance of the evidence. The standard of proof in criminal cases is beyond a reasonable doubt. This case changes that standard.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship* 397 U.S. 358, 364 (1970). This standard of proof "plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding. *Id.* at 363.

This evidence was entirely circumstantial. I find it insufficient to support the jury verdict. The majority states there is substantial evidence but fails to state what that evidence is. The recognized test for substantial evidence is whether the jury could have reached its conclusion without having to resort to speculation and conjecture. *Cassell* v. *State,* 273 Ark. 59, 616 S.W.2d 485 (1981). This conviction is based upon evidence which lacks important elements as shown in cases cited by the majority where we found circumstantial evidence to be sufficient. In this case, there was no testimony by the victim concerning the rape that was corroborated by the doctor who examined her; nor was there testimony of witnesses that was probative on the issue of identification of the assailant. Such identification would serve to connect the appellant with the crime and thereby establish his identity as the perpetrator as shown in *Fountain* v. *State,* 273 Ark. 457, 620 S.W.2d 936 (1981). Under this record, the circumstances could be just as consistent with the guilt of innumerable people who might have had access to the victim on the night in question.

The appellant also argues that the trial court erred when it denied his motion for mistrail after a police officer volunteered testimony about the appellant's prior arrest record. During the trial, Memphis Police Officer Wilburn R. Marr testified that he made an ink fingerprint of the appellant when he was arrested. During the cross examination by appellant's counsel, the following occurred:

> Q. Officer Marr, were these the first taken here, or did you have to take any more than once?
>
> A. No sir, that's all I took. *We do have a prior arrest record on him,* which we do have a fingerprint card on. (emphasis added)

The trial judge ruled that the officer's response could well have been considered by him as being pertinent to the question and did not appear to be a deliberate effort by the officer to interject improper matters into the trial. Although we have held that when the appellant injects the matter into a case by questions on cross-examination, he cannot complain of what develops, that is not the situation here. The appellant's attorney asked the officer if he had to take the fignerprints more than once. The officer's initial response of "No sir, that's all I took," was a responsive answer to the question. The second statement served no purpose, other than to inform the jury that the appellant had an arrest record. The judge overruled the appellant's objection and did not admonish the jury to disregard the second statement, which would have served to nullify the prejudicial effect of that statement. See *Back* v. *Duncan,* 246 Ark. 494, 438 S.W.2d 690 (1969). The court's failure to admonish the jury was error. In the absence of such an admonition, an error is presumed to be prejudicial unless the contrary affirmatively appears. *Back, supra.*

In addition, the trial court committed reversible error when it failed to instruct the jury on the lesser included offenses to capital murder. Prior to giving any instructions, the judge stated:

> Since the decision has been made not to include any lesser included offenses, either instruction or verdict

form, I am removing those transitional instructions which mention those.

The judge did not explain why the decision was made and the record does not reflect any discussion that may have taken place. We have held that there is no error in the refusal to give an instruction where there is no evidence to support the giving of that instruction. *Couch v. State,* 274 Ark. 29, 621 S.W.2d 694 (1981). The appellant in *Couch* was also charged with capital murder. There, we held that "[i]f there had been even slight evidence that appellant was guilty of murder in the first degree we would reverse and require an instruction on that lesser included offense." First degree murder is defined in Ark. Stat. Ann. § 41-1502 (Repl. 1977) as:

(1) A person commits murder in the first degree if:

(a) acting alone or with one or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or

(b) with the premeditated and deliberate purpose of causing the death of another person, he causes the death of any person.

. . . .

Second degree murder is defined by Ark. Stat. Ann. § 41-1503 (Repl. 1977) as:

(1) A person commits murder in the second degree if:

(a) with the purpose of causing the death of another person, he causes the death of any person; or

(b) he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or

(c) with the purpose of causing serious physical injury to another person, he causes the death of any person.

. . . .

I cannot say that there is not slight evidence of the appellant's guilt of these two lesser-included offenses and therefore the jury instruction should have been given. We held in *Brewer* v. *State*, 271 Ark. 254, 608 S.W.2d 363 (1980) that, "[n]o right has been more seriously protected by this Court than the right of an accused to have the jury instructions on lesser offenses included in the more serious offense charged." We addressed the same issue and reached the same conclusion in *Robinson* v. *State*, 269 Ark. 90, 598 S.W.2d 421 (1980), where we stated that it is error to refuse to give the instruction, "no matter how strongly the trial judge feels that the evidence weighs in favor of a finding of guilty on the most serious charge. Our strong preference for such an instruction has even induced us to approve giving it over the defendant's objections." Here, the appellant did not object to the failure to give the instruction. In *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1970) we reiterated our fundamental rule "that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court." Exceptions have been made to that rule however, as was pointed out in *Wicks*. One exception dealt with two cases in which the death penalty was imposed where, "we did not require an objection the the trial court's failure to bring to the jury's attention a matter essential to its consideration of the death penalty itself." *Wicks, supra.* Here, the trial court failed to bring to the jury's attention a matter essential to the consideration of a sentence of life without parole. By omitting the instructions on lesser included offenses, the court presented the jury with the option of convicting the appellant of capital murder and sentencing him to death or life without parole, or acquitting him. Two other exceptions mentioned in *Wicks* are applicable. One involves the trial court's duty to intervene in the absence of an objection, to correct a serious error, and the other is based on Ark. Unif. R. Evid. 103 (d) "Nothing in this rule precludes taking notice of errors affecting substantial

rights although they were not brought to the attention of the court." The failure to give the required instructions is a serious error and affects a substantial right of the appellant. Although appellant did not present this argument on appeal, it is properly before us because Ark. Sup. Ct. R. 11 (f), requires this court to review all errors prejudicial to the appellant when the sentence is death or life imprisonment.

The appellant may be guilty. A jury of his peers found that he is. A majority of this Court agrees. But a consideration of the evidence has convinced the dissent that the evidence is too slight to support the underlying charges of rape and kidnapping and therefore to support the verdict. Justice would be better served to submit the facts to another jury. In view of the other errors alleged and their cumulative prejudicial effect, I am of the opinion that a new trial should have been granted.

PURTLE, J., joins in this dissent.

DUDLEY, J., dissents.