Jerry CESSOR *v.* STATE of Arkansas

CR 83-127                                668 S.W.2d 525

Supreme Court of Arkansas
Opinion delivered April 30, 1984

*Robert B. Wellenberger,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Dep. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. Jerry Cessor, appellant, was charged with capital murder. At trial, the proof of guilt was overwhelming. He was found guilty and was sentenced to life imprisonment, without parole. He appeals. We affirm. Jurisdiction is in this court under Rule 29(1)(b).

On September 3, 1982, Hairl Gene Patterson, a route salesman for Tom's Toasted Peanuts, commenced his routine Friday route through Arkansas City and McGehee. The appellant, formerly a salesman for Tom's Toasted Peanuts on the same route, knew that Patterson would possess three to four hundred dollars by the time he completed the route. Various witnesses, including the marshal of Arkansas City, saw appellant, a resident of Dermott, in Arkansas City between 12:00 noon and 3:00 p.m. Between 3:04 and 3:25 the first of several witnesses saw Patterson's route truck parked, with the door open and the motor running, on the side of Highway 4 midway between Arkansas City and McGehee. Patterson and the sales receipts were missing.

Various law enforcement agencies began to investigate. Patterson was still missing on September 8 when investigators questioned appellant about the possibility he might have observed something on September 3 which would be of assistance in solving Patterson's disappearance. Appellant told them he had been in Arkansas City on the day Patterson had disappeared and that he had talked to the marshal. He further stated he was there to talk to a man in a bar about construction work in the Arkansas City area. Later, the investigator went to the bar and talked to the manager. She did not know appellant. She knew of no one matching his description and stated that she could not recall ever seeing him. The investigator also found there was no construction work in the Arkansas City area. The police then learned that appellant had gone to either Oklahoma or Texas. A week later, at shortly before 9:00 a.m. on September 15, the police were notified that appellant was in Goudy's Pawn Shop in Monticello.

Almost a month earlier, on August 23, 1982, the Judge of the Dermott Municipal Court had issued a warrant for the arrest of appellant for nonpayment of a fine for shoplifting. Appellant lived in Dermott. The Dermott Chief of Police had notified appellant by telephone that the warrant of arrest had been issued. The existence of the warrant had been communicated to various nearby law enforcement agencies.

Then, on the morning of September 15, after learning that appellant was at Goudy's Pawn Shop, the radio operator for the Monticello Police Department dispatched an officer to arrest appellant on the outstanding arrest warrant issued earlier by the Judge of the Municipal Court of Dermott. The arresting officer did not know the reason he was directed to arrest appellant until he took him to the Monticello police station. There, appellant asked why he was being held and a second officer told him that he was arrested pursuant to the Dermott warrant.

The state police investigator assigned to inquire about Patterson's disappearance drove to Monticello and arrived at the police station between 10:00 and 10:30 a.m. He told appellant he wanted to talk to him about his being in

Arkansas City on September 3 and about the misleading statements he had previously made. The appellant responded he was tired of the police "being on my back" and he stated he wanted to take a lie detector test. He was not interrogated. Arrangements were made with a state police polygraph examiner to give appellant an examination at 9:00 a.m. the next morning, September 16, in Pine Bluff. Appellant was then taken to Dermott and placed in jail under the authority of the Dermott warrant. At 7:30 the next morning the state police investigator took appellant from the jail and drove him to Pine Bluff for the polygraph examination. The appellant was not questioned during the trip. After arriving in Pine Bluff, the polygraph operator told appellant about each of his constitutional rights. After each right was read to him, he was asked if he understood, and when he responded with a positive answer, he initialed the printed Miranda form. He also signed a form stating that he volunteered to take the polygraph examination.

The examiner asked appellant whether he shot Patterson. He responded "Yes, sir, I did" and started crying. He then asked to see the state police investigator who had driven him to Pine Bluff. He gave the state police investigator the following confession. He had been behind in the payment of his bills and desperately needed money. He knew the amount of money Patterson would have as he left Arkansas City on Friday. He purchased a .38 caliber RG pistol and a box of shells at the Wal-Mart store in McGehee on Friday morning, September 3. He left Dermott between 10:00 and 11:00 a.m. and arrived in Arkansas City about noon. He talked to the city marshal and later saw Patterson's truck. He followed the truck and got Patterson to stop by flashing his lights. He then pulled the pistol on Patterson, tied his hands behind him, robbed him of about $300.00 and forced him to get into his car. He drove Patterson to an old shed at Hudspeth and shot him to death. Later, after being taken to the scene, he showed the officers where he had hidden the body. He showed them where he had burned Patterson's checks, where he had thrown Patterson's driver's license and billfold and showed them where he had discarded the rope he had used to tie Patterson's hands. He told the police the remainder of the box of .38 caliber shells was in his home

and he executed a form authorizing them to search for the shells. Like the other items, the shells were found.

At trial, in addition to the confession, the state put in evidence the proof of appellant's purchase of the pistol and shells on September 3, medical and ballistics proof that his pistol was the murder weapon, and proof that appellant pawned the same pistol on September 15, after the murder. The state also introduced evidence that appellant purchased five feet of nylon rope on the morning of the crime. The rope was identical to that used to tie Patterson's hands. Patterson's collections for the day were proven and his empty billfold was shown.

Prior to trial, appellant filed a motion requesting public funds for the employment of a psychologist or psychiatrist, a ballistics expert, and an independent investigator. The trial court ordered that appellant be given a complete record of the state hospital's psychiatric examination. Prior to trial, appellant, in response to a motion for discovery, stated that he would not rely on an affirmative defense. Under these circumstances, the trial court did not abuse its discretion in denying appellant's motion for an unnamed private psychiatrist or psychologist. *Love* v. *State*, 281 Ark. 379, 664 S.W.2d 457 (1984).

Appellant did not name the ballistics expert he wished to employ, nor did he support his contention by showing what, if anything, an additional ballistics expert could have offered in appellant's behalf. Appellant did not deny that he killed Patterson with the pistol he had purchased. At trial, he did not cross-examine the state's expert. Under these circumstances, the trial court did not abuse its discretion in denying appellant's motion for an additional ballistics expert. *See Adams* v. *State*, 276 Ark. 18, 631 S.W.2d 828 (1982).

We find no error in the trial court's refusal to authorize the expenditure of public funds for an investigator for appellant. The state called twenty-eight witnesses. Nine were law enforcement officers. Seven of these nine had testified

and had been cross-examined by appellant's attorney at the suppression hearing held prior to the trial. The other two only testified about the crime scene and the chain of evidence. Only two experts testified, the ballistics expert and the state medical examiner. The appellant did not contest their testimony and did not cross-examine either of them. The remainder of the witnesses testified about finding Patterson's truck and possessions, seeing appellant in Arkansas City on September 3 and about appellant's purchasing the pistol and shells and pawning the pistol. The state provided discovery to the confession by appellant, reports of the scientific tests, copies of written and recorded statements by potential witnesses and a list of all tangible evidence to be used at trial. In light of the state's compliance with comprehensive discovery, appellant's confession, and the nature of the defense, the trial court did not abuse its discretion in refusing to appoint an investigator for appellant. *See Simmons* v. *State,* 278 Ark. 305, 316, 645 S.W.2d 680, 686 (1983).

Appellant next argues that his confession and the evidence which was seized should have been suppressed because they were the results of the exploitation of an illegal arrest. *See Wong Sun* v. *United States,* 371 U.S. 471, 479 (1963) and *Coble* v. *State,* 274 Ark. 134, 138, 624 S.W.2d 421, 423 (1981). We find no merit in the argument. While appellant's arrest was a seizure within the meaning of the fourth amendment, *Delaware* v. *Prouse,* 440 U.S. 648 (1979), it was a valid arrest. Prior to the capital murder of Patterson, the appellant had been sentenced to pay a fine and costs. He defaulted. Upon an affidavit of default the judge issued a warrant of arrest. Ark. Stat. Ann. § 41-1103 (1) (Repl. 1977) provides:

> Consequences of nonpayment of fine or costs. — (1) When a defendant sentenced to pay a fine or costs defaults in the payment thereof or of any installment, the court, upon its own motion or that of the prosecuting attorney, may require him to show cause why he should not be imprisoned for nonpayment. *The court may issue a Warrant of arrest or summons for his appearance.* [Emphasis ours.]

The warrant was validly issued and the appellant was legally arrested. The arrest was not a sham to provide an opportunity to question appellant. It was not necessary that the arresting officer knew of the warrant since the police agency directing him to make the arrest had knowledge of the warrant.

We find no merit in appellant's argument that his confession was taken in violation of his fifth amendment rights. We independently review the totality of the circumstances surrounding a confession to determine whether an accused knowingly, voluntarily and intelligently waived his constitutional rights. *Williams* v. *State,* 281 Ark. 91, 663 S.W.2d 700 (1983). Among the factors to be considered in determining the validity of a confession are the age, education, and intelligence of the accused, the advice or lack of advice of his constitutional rights, the length of detention, the repeated or prolonged nature of the questioning, or the use of mental or physical punishment. *Barnes* v. *State,* 281 Ark. 489, 665 S.W.2d 263 (1984). Appellant's age is not in the record; however, he was a married adult with an arrest record going back to 1974 and he had been previously incarcerated in the Arkansas Department of Correction. He had been arrested in Drew County in 1974, 1975 and 1977 and in Chicot County in 1974 and 1980. On each of these occasions he had been advised of his constitutional rights. He was able to read. He was given a *Miranda* warning prior to the confession in the case at bar. He stated that he understood his rights. He initialed a form to indicate he understood them. The interrogation was short. He confessed immediately after being questioned by the polygraph examiner. He had been incarcerated less than twenty-four hours. Under these circumstances the trial judge did not commit error in allowing the statement into evidence.

Appellant next urges this court to overrule *Rector* v. *State,* 280 Ark. 385, 659 S.W.2d 168 (1983) and to hold that death qualification of the jury in a capital murder case is unconstitutional. We decline to so do.

The appellant contends that the trial court erred in refusing to grant a continuance. The trial court has

discretion to determine whether a continuance is appropriate. The denial of a continuance will not be reversed unless there was a clear abuse of discretion which constitutes a denial of justice. *Walls* v. *State,* 280 Ark. 291, 658 S.W.2d 362 (1983). Appellant did not cite to the trial court any witnesses or evidence that could have been developed had a continuance been granted. *See Orsini* v. *State,* 281 Ark. 348, 665 S.W.2d 245 (1984). Therefore, appellant has failed to demonstrate any abuse of discretion or any prejudice and the argument is without merit.

No error is found in other objections made during the trial. Rule 11(f) Rules of the Supreme Court. *See Earl* v. *State,* 272 Ark. 5, 612 S.W.2d 98 (1981).

PURTLE, J., and HOLLINGSWORTH, J., concur.

P. A. HOLLINGSWORTH, Justice, concurring. I agree with the result reached by the majority in this case. However, I do not agree with the majority view on death-qualified juries and would overrule *Rector* v. *State,* 280 Ark. 385, 659 S.W.2d 168 (1983).

PURTLE, J., joins in this concurrence.