Joe HARMON v. STATE of Arkansas

CR 84-212                                    690 S.W.2d 125

Supreme Court of Arkansas
Opinion delivered June 3, 1985

*Mark Cambiano,* for appellant.

*Steve Clark*, Att'y Gen., by: *Jack Gillean*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Joe Harmon has been tried three times for killing Ricky Bennett. He was first convicted of capital murder, and that conviction was reversed. *Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982). His second trial resulted in a hung jury. In the third trial he was convicted of first degree murder and sentenced to life imprisonment. Our jurisdiction arises from Arkansas Supreme Court and Court of Appeals Rule 29. 1. b. and j.

Four points are raised in this appeal. First, we are urged to reconsider our position on death qualified juries. Second, we are asked to hold it was error to limit defense counsel in posing hypothetical cases to jurors who announced, on voir dire, reluctance to impose the death penalty. Third, error is asserted in admission into evidence of Harmon's confession which was made, he alleges, after he had requested but not obtained counsel. Fourth, error is asserted in admission into evidence of an inculpatory letter written by Harmon to Dorothy Rader while he was awaiting trial. We find no error, thus the conviction is affirmed.

## *1. Death qualified juries*

The appellant argues the decision of the Eighth Circuit Court of Appeals in *Grigsby* v. *Mabry*, 758 F.2d 226 (8th Cir. 1985), requires that we change the position we adopted in *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983). We dealt with the Eighth Circuit's decision in dictum in *Hendrickson v. State*, 285 Ark. 462, 688 S.W.2d 295 (1985), noting that we decline to change our position on this issue. Our independent judgment and holding is that death qualified juries are not unconstitutional, and the United States Supreme Court has not ruled that they are unconstitutional. Our rationale is stated in the *Rector* case and adhered to in the *Hendrickson* case.

## *2. Voir dire limitation*

A part of the voir dire of a venireman was as follows:

MR. MASSEY [the prosecutor]: Q. And what you

are telling me, no matter what the circumstances were, that you wouldn't vote for death?

A. No, I couldn't, not really.

. . .

MR. CAMBIANO [defense counsel]: Q. And the second thing I want to bring out is, I want to know if you—you say in all cases you would never—could never vote for the death penalty. But let me ask you a few different cases. I'm not particularly talking about this particular case with Joe Harmon. I'm talking about, say, there was a small—the death of a small child involved. Say, this person tortured this child and sexually molested the child and killed the child. Could you consider giving the death penalty to someone who would do something like that?

A. That's different, I probably could.

The venireman was ultimately excused after reiterating her inability to invoke the death penalty, and the defense counsel was not permitted to pose hypotheticals in inquiring of other veniremen. The court told him to "stay away from the specific factual issues not involved in this case."

■ The judge's ruling was precisely in line with the position we stated in *Rector v. State, supra*. There venireman McKenna was excused because of his opposition to the death penalty despite his statement that he might reluctantly go along with a death sentence if he knew the accused would "assuredly kill others in the future." We said:

There was certainly no possibility that in the course of this trial McKenna would know that Rector would assuredly kill others in the future. Hence McKenna was properly excused for cause. If this is not so, then defense counsel is always in a position to present to a venireman a totally irrelevant hypothetical situation and, if the juror admits that he might vote for the death penalty in that case, insist that the juror is acceptable. We do not understand the Supreme Court's decisions to have gone that far. [280 Ark. at 398, 659 S.W.2d at 175.]

### 3. Right to counsel

At the time of the killing the appellant lived with Dorothy Rader at her home. The appellant was arrested at the office of a Pine Bluff lawyer who was representing him on other matters. The lawyer advised the appellant to "keep his mouth shut" and get another lawyer to represent him on the murder charge, to which the appellant replied "okay." Later, the appellant was transferred to the Yell County jail where he was interrogated by investigator Kimery of the Arkansas State Police.

Kimery testified he obtained the appellant's signature on a waiver of rights form before taking the appellant's statement. The waiver form included acknowledgment of the right to counsel and a waiver of that right. Kimery testified the appellant did not make any mention of a lawyer.

The appellant's testimony is directly to the contrary. He says he told Kimery he was waiting for Dorothy Rader to get a lawyer for him and that he had told her to get a lawyer at the time of his arrest in Pine Bluff. No one who was present at the arrest remembered or could testify with certainty that the appellant had told or asked Rader to get him a lawyer. Rader testified she did not remember being asked to find a lawyer for the appellant, and she said she had not tried to do so.

We cannot say the court erred in admitting the statement, given the express waiver executed by the appellant and the conflict in testimony as to whether he said he wanted the services of a lawyer when he was questioned.

### 4. The letter

Shortly after his arrest the appellant wrote a letter to Dorothy Rader in which he told her he was guilty "of being part of shooting that person." He acknowledged that he had given a statement to the state police investigator. He then said he would not plead guilty because he would have a chance for a sentence to life imprisonment, or less, with a jury, but he felt he would get no less than death or life without parole if he pleaded guilty.

His contention is that Ark. Unif. R. Evid. 403, Ark. Stat. Ann. § 28-1001 (Repl. 1977) required exclusion of the letter because its unfairly prejudicial effect outweighed its probative

value. At the trial the appellant objected to allowing the letter to go before the jury because of the statements it contained about possible sentences. No mention of Rule 403 was made in the objection. However, giving the appellant the benefit of the doubt as to whether his objection raised the issue to which Rule 403 applies, we hold the judge did not abuse his discretion in balancing prejudice against probative value. The appellant says in view of his already admitted confession the letter was only cumulative. That point cuts both ways, as it might be said that in view of the confession there was little, if any, prejudice, and surely not the *unfair* prejudice of which the rule speaks. We have held that the balancing called for by Rule 403 is most appropriately done by the trial judge. We will not reverse his decision absent a manifest abuse of discretion. *Beed* v. *State*, 271 Ark. 526, 609 S.W.2d 899 (1980); *Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980).

Affirmed.