Bobby Ray FRETWELL *v.* STATE of Arkansas

CR 85-208                                              708 S.W.2d 630

Supreme Court of Arkansas
Opinion delivered May 19, 1986

*William J. Velek*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was charged with capital murder. He realized that at trial the proof of guilt would be overwhelming. Under Arkansas law only a jury may impose the penalty of death, so appellant attempted to plead guilty to the court, but the prosecutor would not assent, and the court would not accept the plea. After the jury had been picked, appellant tried to plead guilty to the jury, skip the guilt or innocence phase of the trial, and proceed immediately with the sentencing phase of the bifurcated trial. The prosecutor objected and insisted on making his proof during the guilt or innocence phase. The trial court allowed the prosecutor to do so. The jury found appellant guilty and began deliberations on the penalty. After two and one-half hours, the jury reported that they stood eleven to one. The trial court erroneously gave them AMCI 6004, the Allen instruction. Shortly thereafter, the judge corrected the instruction. The next day, the jury fixed punishment at death by electrocution. Appellant appeals from the sentence of death, and not from the finding of guilt. We affirm the sentence.

Appellant first contends that it was within the court's discretion to accept his plea of guilty to the court, even without the prosecutor's assent, and that the court's refusal to exercise any discretion at all denied him due process and equal protection. Appellant's first premise is fallacious, and the argument is without merit because in Arkansas a felony defendant is not

entitled to a trial to the court without the assent of the prosecutor.

The Rules of Criminal Procedure are precisely in point. A.R.Cr.P. Rule 31.1 provides:

*Waiver of Trial by Jury: Assent by Prosecutor.*

No defendant in any criminal cause may waive a trial by jury unless the waiver is assented to by the prosecuting attorney and approved by the court.

The rule is clear. Criminal cases which require trial by jury *must* be so tried unless (1) waived by the defendant, (2) assented to by the prosecutor, and (3) approved by the court. The first two requirements are mandatory before the court has any discretion in the matter. Here, the second requirement, assent by the state, was not had and the court was without discretion to allow the plea. Rule 31.1 is augmented by Rule 31.4 which provides:

*Waiver of Trial by Jury: Capital Felonies.*

No defendant charged with a capital felony may waive either trial by jury on the issue of guilt or the right to have sentence determined by a jury unless:

(a)   the court in which the cause is to be tried determines that the waiver is voluntarily and freely proffered without compulsion or coercion; *and*

(b)   the prosecuting attorney with the permission of the court, has waived the death penalty; *and*

(c)   the prosecuting attorney has assented to the waiver of trial by jury, and such waiver has been approved by the court.

(Emphasis added.)

Again, the rule sets out the conditions which must be met before a defendant charged with a capital felony may waive a trial by jury. The conditions are separated with the conjunctive word "and", not by the disjunctive "or." If all of the conditions are not met, then the court has no discretion.

The appellant similarly argues that the trial court erred

in refusing to allow him to plead guilty to the jury. The trial court did not err. Under the rules set out, the prosecutor had the right to present his case to the jury.

We recognize that the rules in some states give a defendant the absolute right to waive a jury trial. *See* Note, 38 Texas L. Rev. 928 (1960). Arguments exist for a rule which allows the accused alone to determine the mode of trial. *See* Commentary to American Bar Association Standards For Criminal Justice, Standard 15-1.2 (Supp. 1986). In promulgating our rules, this Court adopted the rule which we deem to be the better one. It is in accordance with Standard 15-1.2 of the American Bar Association Standards for Criminal Justice:

Waiver of Trial by Jury

(a) Cases required to be tried by jury should be so tried unless jury trial is waived, with the consent of the prosecutor.

It is also in accordance with Rule 23(a) of the Federal Rules of Criminal Procedure. *See* Note, *Government Consent to Waiver Of Jury Trial Under Rule 23(a) Of The Federal Rules of Criminal Procedure*, 65 Yale L. J. 1032 (1956).

Appellant's next argument concerns the Allen charge, or dynamite instruction, which was erroneously given during the sentencing phase of the trial.

Initially, the court correctly instructed the jury on the procedure for fixing the sentence, and the jury retired to the jury room at 3:12 p.m. At 5:46 p.m. they returned to the courtroom, and the foreman asked:

We have gone through the forms which you provided us, Your Honor, sir, and have made decisions, and we're down to the punishment—the bottom line, so to speak—and we're eleven to one. And we wondered what you would instruct us to do at this point.

Appellant's attorney asked if they were deadlocked, and the jury foreman responded, "We did not take a vote on whether or not we were deadlocked. We have just made several test votes." The trial judge then gave them AMCI 6004, the Allen charge. The charge was obviously erroneously given since, if the

jury did not unanimously agree on the death sentence, their verdict would automatically stand at life without parole and there would not be a retrial. The jury went back to the jury room at 5:52 p.m. They deliberated under the Allen charge for one hour and at 6:52 p.m. returned to the courtroom with the following request:

> Your Honor, sir, we voted that we would like to go to dinner and then return for some more deliberations this evening. We are eleven to one, and I detected a reluctance to declare that it was impossible to move from that.

The court declared a recess for dinner and instructed the jury to be back in the jury box at 8:00 p.m. When the jury returned from recess, the court corrected his earlier mistake by instructing the jury as follows:

> Earlier I read you the instruction that's commonly referred to as the dynamite instruction which tells you to decide this case if at all possible. And a part of that instruction says that the case might have to be tried again by another jury. That's incorrect. This case will never be heard by any other jury than yourselves.

> If you are unable to unanimously agree to the answers to the questions contained in form number three, then your verdict has already been and will be decided for you by the instructions included in form three.

> Now, with that information, please return to the jury room and begin redeliberating.

The jury retired at 8:00 p.m. and returned at 9:20 p.m. with the following request:

> The situation remains at eleven to one. The person that is the one is requesting, and the jury endorses that request—subject to your order, of course—that we be permitted to allow that person to sleep on it over night, reflect on it, pray on it and then come back in the morning sir, at your convenience and make one more attempt.

The court granted the request and directed the jury to return at 9:30 a.m. At 9:30 a.m. the next morning, the jury returned to the jury room for further deliberations and returned at 11:10 a.m. with its verdict.

■ The appellant argues that the erroneous reading of AMCI 6004 subjected the jury to deliberation under the pressure of coming to a unanimous decision and encouraged a penalty of death. He also argues that the court should have imposed a sentence of life without parole because the jury demonstrated its lack of unanimity by taking several votes. The appellant, in conclusion, urges this Court to reverse his sentence and find that he is entitled to be sentenced to life imprisonment without parole.

Appellant is partially correct in the first argument. Clearly, the giving of the Allen charge was erroneous as it would encourage unanimity and possibly encourage a penalty of death in order to avoid a retrial. However, the jury deliberated under the erroneous instruction only from 5:52 p.m. to 6:52 p.m. They then went to dinner, and upon returning were correctly instructed at 8:00 p.m. The fact that the jury did not change its vote during the one hour deliberation under the Allen charge demonstrates that the error was harmless. The vote changed the next day, only after the instruction was corrected, and the one juror was granted his request to "sleep on it overnight, reflect on it, pray on it and come back in the morning. . . ."

The appellant argues that the trial court should have taken the case from the jury after their preliminary votes. The argument is without merit. The jury never reported that it was deadlocked. In fact, they asked for more time. They only deliberated a total of about six and one-half hours before being able to fix the sentence. There simply is nothing to indicate that the trial judge abused his discretion in letting the jury decide the matter. There is no reversible error in any of appellant's points of appeal.

Pursuant to Rule 11(f) of the Rules of the Supreme Court and the Court of Appeals, the state has raised two issues, death qualified juries and double counting.

■ The use of death qualified juries was declared unconstitutional in *Grigsby* v. *Mabry*, 569 F. Supp. 1273 (E.D. Ark. 1983). The decision of the district court was affirmed by the Eighth Circuit Court of Appeals in *Grigsby* v. *Mabry*, 758 F.2d 226 (8th Cir. 1985). This court, in *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983), and in many subsequent cases, held that such juries were constitutional. The Supreme Court of the United

States ended the matter by holding that such juries are constitutional in *Lockhart* v. *McCree*, ___ U.S. ___, 106 S.Ct. 1758 (1986).

Double counting, as explained in *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir. 1985), violates the eighth and fourteenth amendments to the United States Constitution because it allows an element of the underlying crime, pecuniary gain, to be counted again as an aggravating circumstance, and thus fails to narrow the class of persons already guilty of robbery-murder. This court has never decided the issue, and we do not now reach it because there was no objection at trial to the instructions which allowed double counting. As we said in *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980), "in hundreds of cases we have reiterated our fundamental rule that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court." We have long held, under Rule 11(f) and Ark. Stat. Ann. § 43-2725 (Repl. 1977), that when life is at stake, we will make our own examination of the record and reject or accept on their merits all objections made at trial, whether or not argued on appeal, but we do not consider a matter in the absence of an objection. We have made exceptions where there were egregious circumstances, such as where the trial court apparently failed to tell the jury that it had the option of imposing a life sentence. *Smith* v. *State*, 205 Ark. 1075, 172 S.W.2d 248 (1943). Appellant asks us to make such an exception in this case because:

> To require an objection where there is no established legal basis for the objection, but, rather, only the hope that existing law will be changed, would require an attorney to constantly make objections any time he has an argument to change the existing law, including even those arguments which have been unsuccessful in the past.

The argument reaches the heart of the matter, for it is our intention to require one who wishes to change the law to raise the matter in the trial court and give his adversary notice of the matter and opportunity to make a timely record. To allow any other procedure would be to allow endless and untimely litigation.

Finally, we compare the wickedness, inhumanity, and heinousness of this capital case with other capital cases in order to be certain that the death sentence is not freakishly, capriciously,

or whimsically applied. After such a comparison, we find no reason to alter the jury's view that the death penalty was proper. In the very early morning, appellant and two accomplices saw a truck which they wanted to steal. It was parked beside a service station. They planned to wait until the station attendant came to work, and then take the keys and kill the attendant. They lay in wait but the attendant did not come to work. They soon located another truck outside a nearby home. They saw a man inside the house and planned to get his truck key and kill him so he could not identify them.

To complete the plan, appellant, armed with a loaded pistol, knocked on the victim's front door. The victim answered the door knock and offered assistance. Appellant then took the victim's money, the key to his truck, and shot him in the temple. Appellant left the victim to die and took the truck. The murder in the course of the robbery was especially egregious, and the death penalty was not freakishly or arbitrarily applied.

Affirmed.

PURTLE, J., not participating.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I concur to update the history of our review of capital cases contained in my concurring opinion in *Ruiz v. State,* 280 Ark. 190, 193, 655 S.W.2d 441 (1983) (Hickman, J., concurring). Since *Ruiz* we have reviewed the death penalty in six cases. Including Fretwell's sentence, affirmed today, we have upheld the death penalty in four cases. *Rector v. State,* 280 Ark. 385, 659 S.W.2d 168 (1983), *cert. denied,* ___ U.S. ___, 104 S.Ct. 2370 (1984); *Fairchild v. State,* 284 Ark. 289, 681 S.W.2d 380 (1984), *cert. denied,* ___ U.S. ___, 105 S.Ct. 2346 (1985), *petition for postconviction relief granted in part; stay of execution denied,* 286 Ark. 191, 690 S.W.2d 355 (1985); *Pruett v. State,* 282 Ark. 304, 669 S.W.2d 186 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 362 (1984), *petition for postconviction relief denied,* 287 Ark. 124, 697 S.W.2d 972 (1985).

In *Miller v. State,* 280 Ark. 551, 660 S.W.2d 163 (1983), the death sentence was reduced to life imprisonment without parole.

In another case the decision was reversed and remanded for a new trial. *Hendrickson* v. *State*, 285 Ark. 462, 688 S.W.2d 295 (1985). It has not yet been presented on a second appeal. Neither have two cases we previously reversed and remanded, before *Ruiz*, come before us again. *Penelton* v. *State*, 277 Ark. 225, 640 S.W.2d 795 (1982); *Rhodes* v. *State*, 276 Ark. 203, 643 S.W.2d 107 (1982). We reversed the death sentence in *Harmon* v. *State*, 277 Ark. 265, 641 S.W.2d 21 (1982). On retrial Harmon was found guilty of first degree murder and received a life sentence, which we affirmed at 286 Ark. 184, 690 S.W.2d 125 (1985).

During this period of time from July 18, 1983, until May 12, 1986, we have reviewed 15 cases in which capital murder was the finding and the death penalty was sought but not imposed. To date we have affirmed the death penalty for 24 persons. Fifteen are white, eight are black and one is hispanic. All are males. In none of the four recent death cases which we have affirmed can there be any doubt that the crime warranted the most severe sentence allowed by law.

In the nine years we have reviewed these cases, no decision in which we have approved the death penalty has been reversed or modified by the United States Supreme Court. At the same time no decision in which we have affirmed the death penalty has been affirmed by the Court of Appeals for the Eighth Circuit. Recently, in *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir. 1985), the Eighth Circuit reduced Carl Albert Collins' death sentence to life without parole because the state used one of the aggravating circumstances (murder committed for pecuniary gain), presented in the penalty phase, as one of the elements of the crime itself (that the murder was committed in the course of a robbery). In *Ruiz* v. *Lockhart*, 754 F.2d 254 (8th Cir. 1985), the Eighth Circuit reversed the district court's denial of Paul Ruiz's and Earl Van Denton's petition for habeas corpus relief and remanded the case with orders that the writ be granted or the petitioners be retried. The basis for the reversal was the holding that death qualification of a jury creates a conviction prone jury. That decision was recently reversed in *Lockhart* v. *McCree*, ___ U.S. ___, 106 S.Ct. 1758 (1986), where the United States Supreme Court held that death qualified juries are constitutional.

Several conclusions could be drawn from all these statistics.

The most obvious is that the review process for death cases is far too long and involves too many courts. Are we playing legal games with capital punishment? If the review process, which is directed and controlled by the federal courts, continues to require about ten years and at least seven or eight separate reviews to approach finality, then the process is not just inefficient, it is a failure. A legal system, such as ours which fails to honestly, directly, and efficiently address legal questions of this magnitude will lose the most important foundation stone of that system—the respect of the people.

## ADDENDUM

In the following cases this court has affirmed the appellants' death sentences:

*Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983) *cert. denied*, 466 U.S. 988, 104 S.Ct. 2370 (1984). (Rector shot and killed a policeman.)

*Pruett* v. *State*, 282 Ark. 304, 669 S.W.2d 186 (1984); *cert. denied*, 469 U.S. 963, 105 S.Ct. 362 (1984); *petition for postconviction relief denied*, 287 Ark. 124, 697 S.W.2d 972 (1985). (Pruett has been called the "mad dog killer". He kidnapped and murdered a convenience store clerk.)

*Barry Lee Fairchild* v. *State*, 284 Ark. 289, 681 S.W.2d 380 (1984); *cert. denied*, ___ U.S. ___, 105 S.Ct. 2346 (1985); *postconviction relief granted in part, stay of execution denied*, 286 Ark. 191, 690 S.W.2d 355 (1985). (Convicted of murder, rape, robbery and kidnapping. He was sentenced to die by electrocution. This court granted his petition to allow him the choice between dying by electrocution or by lethal injection.)

The court reduced the sentence from death to life without parole in *Miller* v. *State*, 280 Ark. 551, 660 S.W.2d 163 (1983). (Insufficient evidence of crimes to go to the jury as aggravating circumstances in the penalty phase of Miller's trial.)

In the following case where the appellant received a death sentence, the court reversed and remanded and on retrial the appellant was convicted of first degree murder and received a life sentence. *Harmon* v. *State, rev'd.* 277 Ark. 265, 641 S.W.2d 21

(1982); *aff'd*, 286 Ark. 184, 690 S.W.2d 125 (1985).

The court has reversed the following death penalty cases but they have not yet come up on appeal: *Penelton v. State*, 277 Ark. 225, 640 S.W.2d 795 (1982); *Rhodes v. State*, 276 Ark. 203, 643 S.W.2d 107 (1982); *Hendrickson v. State*, 285 Ark. 462, 688 S.W.2d 295 (1985).

In the following cases capital murder was charged and found, the death penalty was sought but not imposed:

*Breault v. State*, 280 Ark. 372, 659 S.W.2d 176 (1983); *Hogan v. State*, 281 Ark. 250, 663 S.W.2d 726 (1984); *Love v. State, rev'd and rem'd*, 281 Ark. 379, 664 S.W.2d 457 (1984); *Cessor v. State*, 282 Ark. 330, 668 S.W.2d 525 (1984); *Linell v. State*, 283 Ark. 162, 671 S.W.2d 741 (1984); *cert. denied,* ___ U.S. ___, 105 S.Ct. 1778 (1985); *Owens v. State*, 283 Ark. 327, 675 S.W.2d 834 (1984); *Metcalf v. State, rev'd and rem'd*, 284 Ark. 223, 681 S.W.2d 344 (1984); *Hall v. State*, 286 Ark. 52, 689 S.W.2d 524 (1985); *Williams v. State*, 286 Ark. 492, 696 S.W.2d 307 (1985); *Sullivan v. State*, 287 Ark. 6, 696 S.W.2d 709 (1985); *Snell v. State*, 287 Ark. 264, 698 S.W.2d 313 (1985); *Novak v. State*, 287 Ark. 271, 698 S.W.2d 499 (1985), *petition for postconviction relief denied*, unpublished opinion issued April 28, 1986. *Shelton v. State, rev'd and rem'd*, 287 Ark. 322, 699 S.W.2d 728 (1985); *Zones v. State*, 287 Ark. 483, 702 S.W.2d 1 (1985); *Holland v. State*, 288 Ark. 435, 706 S.W.2d 375 (1986).