STATE of Arkansas *v.* Jose Luis VASQUEZ-AERREOLA

CR 96-1277 940 S.W.2d 451

Supreme Court of Arkansas
Opinion delivered March 17, 1997

[Petition for rehearing denied April 21, 1997.]

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen. and *Vada Berger*, Asst. Att'y Gen., for appellant.

*Stutte, Mason & Freeman, PLC*, by: *Charles L. Stutte* and *G. Chadd Mason*, for appellee.

ANNABELLE CLINTON IMBER, Justice. The trial court accepted the appellant's guilty plea to four charges over the State's objection, and dismissed the fifth charge contained in the information for lack of a factual basis. We reverse and remand, finding that the trial court lacked the authority to take this course of action.

On May 15, 1996, the Washington County prosecuting attorney filed a five-count felony information against the appellant, Jose Luis Vasquez-Aerreola. Counts one through four accused Vasquez-Aerreola of delivery of methamphetamine.

These charges involved differing quantities of methamphetamine delivered on four different dates from February to April 1996. Count five accused Vasquez-Aerreola of engaging in a continuing criminal gang, organization, or enterprise in the first degree between January 1, 1996, and April 5, 1996. At his arraignment on May 17, Vasquez-Aerreola pled not guilty to all of the counts. The case was set for trial on August 14.

Subsequently, Vasquez-Aerreola filed a number of discovery motions. Among other things, he requested that the State furnish him with the recorded surveillance of the alleged drug transactions along with the names and addresses of the confidential informants that the State intended to call as witnesses. Vasquez-Aerreola also filed a bill of particulars requesting that the State identify with whom Vasquez-Aerreola occupied a supervisory position with respect to count five. On August 12, 1996, the trial court resolved most of the discovery issues during an in-chambers, off-the-record meeting with the parties. However, the parties went on the record for a hearing regarding the bill of particulars. The State's position was that it had already provided Vasquez-Aerreola with the identity of the parties with whom he acted as a supervisor for purposes of a continuing criminal enterprise. According to the State, three individuals were named in case number 96-178, what it referred to as the "companion case to [Vasquez-Aerreola's case] but not actually co-defendants." Additionally, the State identified two other individuals, Estephan Salas and Ignatio Valazquez aka "Nacho." The State also explained its open file policy with respect to discovery.

The trial court found that the State had fully complied with Vasquez-Aerreola's discovery requests with respect to count five. Additionally, it ordered that the State disclose all of its reports concerning the undisclosed investigations of "Nacho's" activities by 4:00 p.m. that day. According to the judge, "assuming this information is in fact in any way useful in defending this case, [it] will provide an adequate time to review the information to be produced to the defendant." The trial court thus denied Vasquez-Aerreola's motion for a continuance.

On August 13, Vasquez-Aerreola filed a motion to dismiss the third and fourth counts. In count three, Vasquez-Aerreola was accused of delivering, at two separate times on April 8, a total of twenty-eight grams of methamphetamine. According to Vasquez-Aerreola's motion to dismiss, reports from the state crime laboratory indicated that the quantity of methamphetamine was only 23.724 grams. In count four, Vasquez-Aerreola was accused of delivery of over 400 grams of methamphetamine on April 15. According to Vasquez-Aerreola, the lab report showed that the actual quantity of methamphetamine was 377.3875 grams. Vasquez-Aerreola maintained that the quantities of methamphetamine involved in counts three and four were insufficient to trigger the statutory penalty enhancement, and thus should be dismissed.

On August 14, the day of trial, Vasquez-Aerreola decided to change his plea to guilty. The State objected to the guilty plea, and asserted that it had the right to a jury trial. The trial court proceeded to take testimony from Vasquez-Aerreola. He testified that he accepted methamphetamine from Jose Navarro and sold it to others on the dates charged. The trial court then asked defense counsel to summarize what went on in the four transactions.

Defense counsel explained that an individual known as "Gordo" had approached the Fayetteville Police Department and had offered to help them locate people who were selling drugs in exchange for money. According to defense counsel, Gordo arranged for Vasquez-Aerreola to sell the drugs to an undercover police officer. He also asserted that Vasquez-Aerreola actually received very little money for his part in the four transactions.

The trial court announced that it would accept Vasquez-Aerreola's plea to the four delivery counts. The State then renewed a motion it had made in chambers to amend the information to one count of delivery, combining all of the quantities of methamphetamine. The trial court denied this motion and dismissed count five for lack of a factual basis. The trial court then proceeded to sentence Vasquez-Aerreola to thirty years on each delivery count with fifteen years suspended on each one. The

judgment and commitment order reflected that Vasquez–Aerreola had entered a plea "directly to the court."

On September 5, 1996, the State filed a notice of appeal. The trial court subsequently scheduled a hearing in the matter on September 10. At the September 10 hearing, the trial court informed the parties that it was treating the notice of appeal as a "motion to reconsider." The trial court then proceeded to recite the history of the case. The judge made a reference to the in-chambers hearing held on August 12. According to the trial court, Bruce Rhoades, the chief deputy prosecuting attorney, had engaged in a childish temper tantrum, and acted "in a wholly inappropriate fashion which certainly amounted to unprofessional conduct." The trial court then recollected that it had ruled, "in retrospect probably improperly," that the State had complied with its discovery obligations on count five. The trial court also recalled that the State had moved to amend the information to one count on the morning of trial when it learned that a smaller quantity of methamphetamine was involved.

The trial court then explained why it had dismissed count five. While conceding the prosecutor's "sole authority" to dismiss charges against defendants, the court nonetheless maintained that it was apparent there was no factual basis for the charge. The judge emphasized that he had heard the statements of Vasquez–Aerreola and defense counsel, and "other information" gathered from in-chambers conferences, and had concluded that there was no factual basis for the count. The court also understood that the State had abandoned count five when it had attempted to amend down its information, and that the State had not been "entirely forthcoming" in its discovery in retrospect. For all of these reasons, the trial court dismissed count five.

With regard to the jury trial issue, the trial court understood that the State had no statutory or constitutional right to a jury trial. The judge interpreted Ark. R. Crim. P. 31.1 to only apply in situations where there is "going to be a trial." The judge further noted that even if the State had a right to a jury trial, it had waived it through Rhoades's inappropriate conduct. In the trial

court's opinion, the State had intentionally obfuscated critical information in the case.

As an example, the court referred to Rhoades's representation on August 12 that the State did not have the crime lab reports. Apparently, the trial court had independently contacted the crime lab and determined that the State had the reports by August 5. The court thus concluded that the State had intentionally committed discovery violations and had therefore waived any right to a jury trial it might have had. The court conceded that "some of this was not on the record and it should have been," but that it was important that this court "understand[ ] some of the history of this case."

On September 11, 1996, the State filed its second notice of appeal. The State argues that the trial court lacked the authority to accept Vasquez-Aerreola's plea over objection, and that it erred in dismissing count five.

### 1. Jurisdiction

█ The State brings its appeal pursuant to Ark. R. App. P.-Crim 3(b) (formerly codified at Ark. R. Crim. P. 36.10). Rule 3(c) requires the attorney general to inspect the trial record and certify that the correct and uniform administration of the criminal law requires review by this court. Pursuant to the rule, this court accepts appeals by the State when our holding will set a precedent that is important to the correct and uniform administration of Arkansas criminal law. *See, e.g., State v. Murphy*, 315 Ark. 68, 864 S.W.2d 842 (1993). We find that the issues presented in this case sufficiently implicate the correct and uniform administration of the criminal law so as to give this court jurisdiction under Rule 3.

Vasquez-Aerreola nonetheless challenges the State's ability to appeal from his guilty plea. He relies on *State v. Pylant*, 319 Ark. 34, 891 S.W.2d 28 (1994), where the State argued that it had an absolute right to a trial by jury in criminal cases. This court refused to reach the merits of this question, holding that the appeal was procedurally flawed.

In *Pylant* the appellant pled guilty to three counts of delivery of a controlled substance over the State's objection. The trial court denied the State's motion for jury trial. The State then appealed from the denial of this motion, even though the defendant had not yet been sentenced.

The *Pylant* court refused to reach the merits of the State's right to a jury trial, first disposing of the appeal on finality grounds. Because the trial court's order denying the State's motion for jury trial did not dismiss the parties from court or conclude the controversy, the order was not a final judgment. In particular, the court noted that since sentencing had not yet been announced, the defendant could conceivably withdraw the guilty plea under Ark. R. Crim. P. 26.1.

However, the *Pylant* court did not end its analysis there, but continued to state that "aside from issues of finality, the law is well-established that, in general, there is no right to an appeal from a plea of guilty where the appeal constitutes a review of the merits of the plea itself, as in the instant case." *Id.* (citing *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275, (1994)).

 The State maintains that this language in *Pylant* is mere dictum. We agree. *Pylant* was decided on finality grounds, thereby making the quoted language *obiter dictum*.

### 2. Trial Court's Authority to Accept Guilty Plea Over State's Objection

For this point, the State argues that the trial court lacked the authority to accept Vasquez-Aerreola's guilty plea over the State's objection. The State primarily relies on *Fretwell v. State*, 289 Ark. 91, 708 S.W.2d 630 (1986), where a capital murder defendant attempted to plead guilty to the trial court prior to a jury trial. The prosecutor did not assent, and the trial court refused to accept the plea. The jury ultimately convicted the defendant and sentenced him to death.

On appeal, the appellant argued that the trial court had discretion to accept the guilty plea, without assent from the prosecutor. This court characterized this premise as fallacious, because a "felony defendant is not entitled to a trial to the court without the

assent of the prosecutor." *Id.* The *Fretwell* court relied on Ark. R. Crim. P. 31.1 to find that in criminal cases which require a trial by jury, they must be so tried unless: 1) waived by the defendant; 2) assented to by the prosector; and 3) approved by the court. *Id.* The first two requirements are mandatory before the trial court can exercise discretion in the matter. *Id.* Because the State had not assented to the plea, the trial court had no discretion to accept the plea.

Additionally, the *Fretwell* court acknowledged that some jurisdictions afforded criminal defendants the absolute right to waive a jury trial. Indeed, the requirement of prosecutorial assent to jury trial waivers has been criticized. *See generally*, Fred Anthony DeCicco, *Waiver of Jury Trials in Federal Criminal Cases: A Reassessment of the "Prosecutorial Veto"*, 51 Fordham L. Rev. 1091 (1983) (criticizing prosecutorial "veto" under Fed. R. Crim. P. 23(a)). Nonetheless, we reasoned that our position was the better rule.

This court revisited the issue in *Numan v. State*, 291 Ark. 22, 722 S.W.2d 276 (1987), where the appellant had attempted to plead guilty to one of three burglary counts, but the State objected. The appellant was convicted in a jury trial, and argued on appeal that he had a right to plead guilty.

The *Numan* court rejected the contention that the appellant had a constitutional right to a have a guilty plea accepted. *Id.* (citing *Lynch v. Overholser*, 369 U.S. 705 (1962)). While the right may be conferred by statute or rule, this court held that Arkansas had no such statute or rule giving a criminal defendant the right to have his guilty plea accepted. *Numan v. State, supra.*

This court restated the *Fretwell* rule again in *Calnan v. State*, 310 Ark. 744, 841 S.W.2d 593 (1992). In *Calnan* the court reversed the appellant's misdemeanor convictions because of a violation of her right to jury trial. The court essentially held that her right to jury trial was violated because there was no express waiver of the right. In so reasoning, the *Calnan* court quoted *Fretwell v. State, supra*, for the proposition that both the defendant's

waiver, and the prosecutor's assent, are necessary before the trial court has discretion on the issue of waiver.

The facts in the present case are essentially indistinguishable from those in *Fretwell v. State*. There, as here, on the eve of trial, the defendant attempted to plead guilty over the objection of the State. Under Ark. R. Crim. P. 31.1, criminal cases which require a trial by jury *must* be so tried unless:

> (1) waived by the defendant;
>
> (2) assented to by the prosecutor; and
>
> (3) approved by the court.

*Fretwell v. State, supra.* The first two requirements are mandatory before the trial court has any discretion in the matter. *Fretwell v. State, supra.* In the present case, there was no assent by the State, and thus the trial court had no authority to accept the plea.

Vasquez–Aerreola argues for a construction of Rule 31.1 where the State's assent is only required "where a trial is contemplated." This position is also reflected in the trial court's contention that Rule 31.1 would apply if "the case was in a posture where the defendant was wanting a bench trial and the State was wanting a jury trial." However, *Fretwell* does not frame the issue in this manner. The appellants in both *Fretwell* and *Numan* simply wanted to plead guilty instead of proceeding to a jury trial. Neither opinion provides any discussion or places any emphasis on the defendant's desire to go forward with a bench trial. Instead, the relevant inquiry is whether the defendant has a right to have his guilty plea accepted. *See Fretwell v. State, supra; Numan v. State, supra.*

Vasquez–Aerreola also relies on Ark. R. Crim. P. 24.3, which contains no express requirement that the State assent to a guilty plea, except in cases of conditional pleas of guilty or nolo contendere. However, Rule 24.3(d) does require that the trial court give the prosecutor the "opportunity to be heard" before accepting a guilty plea. Thus, there is no inherent conflict between Rules 31.1 and 24.3, and both can be read in a harmonious manner.

We find that the trial court erred in accepting Vasquez-Aerreola's guilty plea without the State's assent. In cases that require a trial by jury, Ark. R. Crim. P. 31.1 requires *both* a defendant's waiver *and* prosecutorial assent before the trial court can exercise discretion in accepting a guilty plea. *Fretwell v. State, supra.* Therefore, we vacate Vasquez-Aerreola's guilty pleas to the four delivery charges, and remand the case for further proceedings.

As an alternative basis for its acceptance of the guilty plea, the trial court suggested that the State waived its right to a jury trial through its intentional noncompliance with discovery obligations. The standard of review on imposing sanctions for discovery violations is whether there has been an abuse of discretion. *Moore v. State,* 323 Ark. 529, 915 S.W.2d 284 (1996).

The trial court's alternative basis for its acceptance of the guilty plea is problematic, given that the trial court had expressly found that the State was in full compliance with its discovery obligations. Additionally, matters such as Rhoades's tantrum and the crime lab reports cannot be found in the record. The trial court conceded that "some of this was not on the record and it should have been." *See* Administrative Order No. 4. Ultimately, given that the trial court had no discretion to accept the guilty plea, *see Fretwell v. State, supra,* we conclude that the trial court abused its discretion, even when its action is viewed as a Rule 19.7 discovery sanction.

### 3. Trial Court's Authority to Dismiss Charge Over State's Objection

For this point, the State argues that the trial court lacked the authority to *sua sponte* dismiss count five against Vasquez-Aerreola. Amendment 21, section 1, of the state constitution reserves the duty of charging an accused to the prosecutor or grand jury. This court has held that a trial court violates the separation of powers when it amends an information over the State's objection. *State v. Hill,* 306 Ark. 375, 811 S.W.2d 323 (1991). In *State v. Murphy,* 315 Ark. 68, 864 S.W.2d 842 (1993), this court stated that "[t]he choice of which charges to file against an accused is a matter entirely within the prosecutor's discretion

(citations omitted), and a duty which the trial court should never perform (citations omitted)."

In *State v. Knight*, 318 Ark. 158, 884 S.W.2d 258 (1994), the defendant entered a guilty plea to possession of methamphetamine with intent to deliver. The trial court then proceeded to conduct a sentencing hearing. After hearing the testimony, the trial court agreed to give the defendant a "break" and sentenced him to ten years supervised probation along with a mandatory one-year in-house treatment for drug addiction. The State objected, arguing that a sentencing judge did not have authority to waive the mandatory ten-year penalty for a Class Y felony. The trial court then reduced the charge to the lesser of mere possession and sentenced the defendant to ten years.

The State appealed and this court reversed, holding that the trial court impermissibly amended the charge in violation of separation of powers. The defendant alternatively argued that the judge did not amend the charge, but rather found that there was an insufficient factual basis for the guilty plea. The *Knight* court rejected this argument, noting that there was a clear factual basis for the charge. The court further found that "even had the judge in this case rejected the guilty plea for lack of a factual basis after he accepted it, he did not follow the correct procedure." *Id.* The court cited Ark. R. Crim. P. 25.3(b), and its requirement that the trial court call upon the defendant to affirm or withdraw the plea if there is no factual basis for a charge. Because the judge did not call upon the defendant to do this, he was not in compliance with the rule. Moreover, the court emphasized that:

> [Ark. R. Crim. P. 25.3(b)] does not authorize a circuit judge to reduce the charge to a lesser included offense; nor does it permit pleading to another charge that the judge believes to be appropriate.

*Id.*

Based upon the reasoning articulated in *State v. Knight*, we conclude that the trial court erroneously dismissed count five in the present case. If the trial court found that there was no factual basis for the plea as to the fifth charge, Ark. R. Crim. P. 25.3(b) mandates that the trial court call upon the

defendant in open court to either affirm or withdraw the plea. This procedure was not followed. Moreover, by extension of the reasoning in *State v. Knight, supra,* if a trial court lacks the authority to amend or reduce a charge under Rule 25.3, then it logically follows that a judge lacks the authority to dismiss a charge under the rule. Thus, we would find that the dismissal of the charge violated the separation of powers, and that count five should be reinstated on remand of the case.

 The trial court also suggested two alternative bases for its dismissal of count five; that the State had abandoned the charge by moving to amend the four delivery counts down to one, and that the dismissal was appropriate as a discovery sanction. With respect to the abandonment theory, the trial court denied the State's motion to amend the information. Subsequently, the trial court dismissed count five over the State's objection. We find no authority to suggest that the mere fact that the State made a motion to amend the information, which was denied, was somehow an "abandonment" of the charges in the information.

We also summarily dispose of the discovery sanction theory. For the reasons stated above, the dismissal of the charge as a discovery sanction under Rule 19.7 violated the separation of powers. *State v. Murphy, supra.*

Reversed and remanded.

ARNOLD, C.J., and THORNTON, J., concur.

W.H. "DUB" ARNOLD, Justice, concurring. I agree with the majority opinion that, in accordance with Ark. R. Crim. P. 31.1, the trial court erred in accepting Vasquez-Aerreola's guilty plea without the prosecutor's assent. I write separately only to suggest that the present rule should be changed.

As pointed out in the majority opinion, the requirement of prosecutorial assent to a defendant's waiver of his right to a jury trial has been criticized. *See generally,* Fred Anthony DeCicco, *Waiver of Jury Trials in Federal Criminal Cases: A Reassessment of the "Prosecutorial Veto"*, 51 FORDHAM L. REV. 1091 (1983) (criticiz-

ing prosecutorial "veto" under Fed. R. Crim. P. 23(a)). Our state constitution grants to the accused the right to trial by jury. Ark. Const. art. 2, § 7. As this right is granted to the accused so that he may be tried by a jury of his peers, then it should follow that the accused should be able to waive this right, in non-capital cases, without assent by the prosecutor. Under the present Rule 31.1, a prosecutor could demand that a defendant accept the plea bargain offered, or force him to be tried by a jury. While I agree that input on the part of the prosecutor is crucial in the ultimate sentencing decision, I do not agree that the prosecutor should have the power to veto a defendant's waiver of his right to a jury trial. In my view, a better rule would be to allow the accused to enter a plea of guilty to the court, while permitting recommendations from the prosecutor regarding sentence. Such a rule would allow an accused to plead guilty and dispense with a trial, thus avoiding delay in the judicial process and crowding of the trial dockets, while allowing input from the State in the sentencing decision. For these reasons, I respectfully concur.

THORNTON, J., joins.