The Honorable Marilyn Edwards State Representative 2330 North Juneway Terrace Fayetteville, AR 72703-2915
Dear Representative Edwards:
You have presented the following questions for my opinion:
 (1) Does Section 3 of Act 330 of 2003 require law enforcement agencies to force the relocation of Level 3 and 4 offenders residing on property they rent if it is within 2000 feet of a school or daycare facility, while allowing offenders who own their residences to remain?
 (2) Is basing the enforcement decision on whether the offender rents or owns the residence constitutionally acceptable?
Response
Question 1 — Does Section 3 of Act 330 of 2003 require law enforcementagencies to force the relocation of Level 3 and 4 offenders residing onproperty they rent if it is within 2000 feet of a school or daycarefacility, while allowing offenders who own their residences to remain?
Section 3 of Act 330 of 2003 does not require law enforcement agencies to force the relocation of any Level 3 or 4 offender who violates the act. Indeed, law enforcement official have no such authority. Their authority is limited to making arrests for apparent violations of the act. Seegenerally A.C.A. § 16-81-106. The decision as to whether to prosecute any offender who violates the act is a decision that is left largely to the discretion of the prosecutor. See Simmerson v. State, 71 Ark. App. 16,25 S.W.3d 439 (2000); Simpson v. State, 339 Ark. 467, 6 S.W.3d 104 (1999);State v. Vasquez-Aerreola, 327 Ark. 617, 627, 940 S.W.2d 451, 455
(1997); Ark. Const., Am. 21, § 1. I note that a knowing violation of the act is a Class D felony, see Acts 2003, No. 330, § 3(d), and therefore carries the penalties associated with that class of felony, which will usually be either a fine or imprisonment. See, e.g., A.C.A. § 5-4-201 and -401. Act 330 is not an eviction statute.
The wording of your question touches upon what I consider to be the more problematic aspect of Section 3 of Act 330 of 2003. As discussed more fully in response to Question 2, Section 3 of Act 330 contains an exemption for certain offenders, thus creating a classification of offenders into two different groups, one of which can be prosecuted for violation of the Act, and the other of which cannot be prosecuted for violation of the Act.
More specifically, Section 3 of Act 330 of 2003 generally prohibits Level 3 and 4 sex offenders from residing "within two thousand feet of the property on which any public or private elementary or secondary school or daycare facility is located." See Acts 2003, No. 330, § 3(a). However, the Act provides that this prohibition does not apply "if the property on which the sex offender resides is owned and occupied by the offender and was purchased prior to the date in which the school or daycare center was established." Id. at § 3(b)(1). Similarly, the Act provides that the prohibition does not apply "if the sex offender resides on property he owns prior to the effective date of this act." Id. at § 3(c)(1).
These provisions create two separate classes of sex offenders: those who reside on property they own prior to the effective date of the Act or prior to the establishment of the facility in question (and who therefore cannot be prosecuted), and those who reside on rented or leased property under similar circumstances (and who therefore can be prosecuted). As discussed in response to Question 2, the classification created by the exemption in Section 3 of Act 330 gives rise to some constitutional concerns.
Question 2 — Is basing the enforcement decision on whether the offenderrents or owns the residence constitutionally acceptable?
In addressing this question, I am required to bear in mind the principle that statutes are entitled to a strong presumption of constitutionality.Fritzinger v. Beene, 80 Ark. App. 416, 97 S.W.3d 440 (2003); Eady v.Lansford, 351 Ark. 249, 92 S.W.3d 57 (2002). Moreover, the party challenging a statute bears the burden of proving that it is unconstitutional. Id.
In addition to the presumption of constitutionality, I must point out some other significant limitations on my constitutional concerns aboutAct 330 of 2003. First, the concerns I express herein arise solely out of the exemption created by the act, and not out of the act as a whole. Second, because the exemption affects only previously-existing property interests, my concern is not with the application of the act to property interests acquired after the effective date of the act and after the construction of a school or day care within the designated distance. Finally, my concern about the exemption is one that can be easily remedied by the General Assembly.
Having stated these limitations, I will discuss my concern. It is my opinion, as indicated previously, that the exemption contained in Section 3 of Act 330 of 2003 gives rise to some constitutional concern because of its classification of offenders on the basis of property ownership. Statutory classifications implicate the principle of equal protection, which arises out of the 14th Amendment to the U.S. Constitution and Article II, § 3 of the Arkansas Constitution. The equal protection principle prohibits certain types of classifications. A "classification," for purposes of an equal protection analysis, is the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity has no rational basis — no rational relation to a legitimate end. Vacco v. Quill, 521 U.S. 793 (1997); Romerv. Evans, 517 U.S. 620, 631 (1996); Clements v. Fashing, 457 U.S. 957
(1982); Seagrave v. Price, 349 Ark. 433, 79 S.W.3d 339 (2002); Craft v.City of Fort Smith, 335 Ark. 417, 984 S.W.2d 22 (1998).
The classification that is created by the exemption in Section 3 ofAct 330 of 2003 does not affect a suspect class or a fundamental right. The rational basis standard is therefore applicable. In applying the rational basis standard, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Eady v. Lansford, 351 Ark. 249, 92 S.W.3d 57
(2002); Ester v. National Home Ctrs., Inc., 335 Ark. 356, 981 S.W.2d 91
(1998); Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729 (1994); FayettevilleSch. Dist. v. Arkansas State Bd. of Educ., 313 Ark. 1, 852 S.W.2d 122
(1993); Arkansas Hospital Assoc. v. State Board of Pharmacy,297 Ark. 454, 763 S.W.2d 73 (1989).
No court has ruled in a published decision on the constitutionality of a residence prohibition for sex offenders with an exemption for existing property owners such as the one that is stated in Section 3 ofAct 330 of 2001.[1] However, the United States Supreme Court has applied the rational basis standard in addressing challenges to various other types of statutory classifications that were based upon property ownership. The Court has upheld some of the statutory classifications, see Quinn v.Millsap, 491 U.S. 95 (1989); Turner v. Fouche, 396 U.S. 346 (1970);Chappelle v. Greater Baton Rouge Airport Dist., 431 U.S. 159 (1977), and has stricken down others, see Ball v. James, 451 U.S. 355 (1981); SalyerLand Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719 (1973);Associated Enterprises, Inc. v. Toltec Watershed Improvement Dist.,410 U.S. 743 (1973). In my opinion, the classification created by Section 3 of Act 330 of 2003 is factually similar to the statutory classifications the Court has found to be unconstitutional.
Quinn, supra, involved a provision of the Missouri Constitution under which the governments of the city of St. Louis and St. Louis County could be reorganized by a vote of the electorate upon a plan of reorganization drafted by a "board of freeholders." This requirement of property ownership for membership on the board was challenged on equal protection grounds. The Court found that the task of the "board of freeholders" to reorganize city and county governments was not linked with land ownership, and the state failed to suggest any defensible purpose for the property ownership requirement. The Court thus held the requirement to be unconstitutional.
For similar reasons, the Court held in Turner, supra, that a requirement that local school board members own property was not rationally related to any legitimate state interest. The Court pointed out that the state could not assume that a lack of property ownership indicated a lack of qualification to serve on the school board. The Court subsequently applied Turner, supra, to strike down a property ownership requirement for membership on a local airport commission.
In contrast, the Court concluded in Ball, Salyer, and Toltec, supra, all of which were water district cases, that a property ownership requirement for membership on the water district boards in question was rationally related to the purpose of those boards; the water delivered by those districts was distributed according to land ownership. In Ball, the Court emphasized "the peculiarly narrow function of [the] local government body" and its "special relationship" to the class of landowners. Ball,supra, at 357.
In my opinion, it may be difficult for a court to conceive of what direct relationship of this nature exists between Act 330's classification of sex offenders on the basis of previous property ownership and the apparent purpose of Act 330. The apparent purpose of prohibiting sex offenders from residing in proximity to schools and daycare facilities is to remove such offenders from the presence of potential victims. Is this purpose served if some offenders are prohibited from residing in such proximity, while others are permitted to do so? It is difficult to conceive of the basis for an assumption that sex offenders who are renters would be more likely to commit repeat offenses than sex offenders who are property owners. There appears to be at most a distant connection between the property ownership distinction and the apparent purpose of the act. I reiterate that the exemption affects only previously-existing
property interests. Therefore, my concern is not with the application of the act to property interests that are acquired after the effective date of the act and after the construction of a school or day care within the designated distance; the act will apply in such instances to both property owners and renters and will treat all Level 3 and 4 offenders alike, regardless of whether they own property or rent. I find no constitutional problem with that application. Rather, my concern is that the exemption treats previously-existing property ownership interests differently than it treats previously-existing leasehold interests. That differentiation in treatment must be rationally related to the purpose of the act in order for the classification to be upheld.
It is possible that the General Assembly created the property ownership exemption of Act 330 as a means of attempting to avoid a possible due process challenge that could result from applying the act to deprive homeowners of their property. Although the goal of avoiding a due process violation is valid and laudable, it may not suffice in this instance to constitute a rational basis for the differentiation between property owners and renters. It appears to be well-settled that a leasehold can constitute a protectable property interest. See, e.g., Department ofHousing and Urban Development v. Rucker, 535 U.S. 125, 135 (2002); Greenev. Lindsey, 456 U.S. 444 (1982); Thomas v. Cohen, 304 F.3d 563 (Ky. 2002); Gentry v. Lee's Summit, Mo., 10 F.3d 1340 (8th Cir. 1993) ("A leasehold and the trade fixtures located on it are undoubtedly property rights[.]"); Ruiz v. New Garden Tp., 232 F. Supp.2d 418 (E.D. Pa. 2002);Turner v. Chicago Housing Authority, 760 F. Supp. 1299 (N.D. Ill. 1991);U.S. v. A Leasehould Interest in Property Located at 850 S. Maple,743 F. Supp. 505 (E.D. Mich. 1990); Lang v. Pataki, 674 N.Y.S.2d 903 (1998);Como v. Carson Square, 648 N.E.2d 1247 (Ind.App. 1995); Western EnergyCo. v. Genie Land Co, 737 P.2d 478 (Mont. 1987).
The question of whether a particular leasehold constitutes a protectable property interest is a question of fact and degree that must be determined on a case-by-case basis. For example, a 30-day lease is less likely to be deemed protectable than a 99-year lease. Nevertheless, even allowing for the possibility that not all leaseholds will be deemed to constitute protectable property interests, the fact that some leaseholds are protectable presents a problem for the exemption of Act 330. The Act provides no protection for any leasehold; all sex offenders who live in previously-rented property are subject to the prohibition and are not entitled to the exemption. Because a due process challenge to a residence prohibition could conceivably be instituted both by homeowners and bysome renters, a goal of avoiding due process challenges is not accomplished by Act 330's differentiation between property owners and renters. If the exemption had been crafted to include both homeowners and renters whose leaseholds were deemed to constitute protectable property interests, I would conclude that the goal of avoiding a due process challenge was a rational basis for the distinction between those offenders entitled to the exemption and renters who did not have a protectable leasehold. But the exemption was not crafted to protect any
renter. Indeed, as crafted, the distinction itself, coupled with the deprivation of a renter's protectable property interest, could give rise to a due process challenge from such a renter on the grounds that the act is in some cases unconstitutionally underinclusive. If such a due process challenge were presented by a renter with a leasehold that constituted a protectable property interest, Section 3 of Act 330 may not survive even the lowest level of scrutiny that is applied by the courts in evaluating due process challenges that do not involve fundamental rights. Under that standard, the legislative scheme in question must be reasonably related to a legitimate state interest. See Washington v. Glucksberg,521 U.S. 702, 722 (1997).
Accordingly, I conclude that under the guidelines that have been provided by the U.S. Supreme Court, the exemption contained in Section 3 ofAct 330 of 2003 could give rise to a constitutional challenge from renters who also seek the benefit of the exemption. This problem could easily be remedied by extending the exemption to renters who already lived in the designated proximity to schools and day cares before the effective date of Act 330 or before the school or day care was built, or even by extending the exemption only to those renters whose leaseholds are deemed to be protectable property interests.
I am aware that your question was prompted in part by a concern as to what actions should be taken by law enforcement officers with regard to apparent violations of the act. I reiterate that statutes are presumed to be constitutional. Therefore, until the exemption contained in Section 3 of Act 330 has been successfully challenged and stricken down by a court, it remains in effect. Nevertheless, law enforcement agencies should be cognizant of the possible challenges that could arise out of enforcement of the act as against offenders who previously rented property in the designate areas. Finally, I emphasize that I have no constitutional concerns about the enforcement of the act against either property owners or renters who acquired their property interest after the effective date of the act and after the construction of a school or day care within the designated distance.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I note that a similar provision was held unconstitutional as applied in State of Iowa v. Keith Frederick Seering, Washington County, Iowa District Court, Criminal No. AGIN006718. It is my understanding that an appeal of that decision is currently pending. Meanwhile, the United States District Court for the Southern District of Iowa (Davenport Division) has issued a Temporary Restraining Order enjoining the enforcement of that provision, finding a likelihood of the Plaintiffs' success on the merits of their constitutional challenge to the provision. Doe v. Miller, U.S. District Court for the Southern District of Iowa (Davenport Division), Docket No. 3:03-CV-90067.